In re JOSEPHSON et al.

(District Court, D. Oregon. January 3, 1916.)

No. 2661.

1. BANKRUPTCY ⬲409—DISCHARGE—DENIAL—FAILURE TO KEEP BOOKS.

Bankruptcy Act July 1, 1898, c. 541, § 14b (2), 30 Stat. 550 (Comp. St. 1913, § 9598), provides for the denial of a discharge where the bankrupt, with intent to conceal his financial condition, has destroyed, concealed, or failed to keep books of account or records from which such condition might be ascertained. A partnership, which subsequently became bankrupt, kept no record of its business, except that afforded by cash register sales slips, and no record of its indebtedness to wholesale houses from whom they purchased stock, except by filing the invoices or bills for reference. *Held*, that the intent to conceal their true financial condition might be deduced from the facts and circumstances, and, as a man must be presumed to intend the natural consequences of his acts, it sufficiently appeared by inference that the failure to keep books was with the purpose of concealing their financial condition.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 739, 752–757; Dec. Dig. ⬲409.]

2. BANKRUPTCY ⬲407—DISCHARGE—DENIAL—FALSE STATEMENT TO OBTAIN CREDIT.

A partnership, which subsequently became bankrupt, on February 7, 1913, made a statement in writing to a creditor to obtain credit, in which it was stated that the liabilities of the partnership were $20,563 and that there was a net surplus of $33,204. Obligations aggregating $7,150 to the wife and sister-in-law of one of the partners and certain other persons were not included, and in the schedules as filed the total indebtedness was shown to exceed $49,000, while up to and including April 23, 1914, additional claims were filed, making the total indebtedness over $58,000. *Held*, that the financial statement was grossly inaccurate, and it might be inferred from the facts and circumstances that the statement was made knowingly and with the view of obtaining credit through a deceitful statement.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 729–731, 737, 738, 740–751, 758, 760, 761; Dec. Dig. ⬲407.]

3. BANKRUPTCY ⬲407—DISCHARGE—DENIAL—"FALSE" STATEMENT TO OBTAIN CREDIT.

Under Bankruptcy Act, § 14b (2), providing for the denial of a discharge where the bankrupt has obtained money or property on credit upon a materially false statement in writing made by him for the purpose of obtaining credit, the statement, to be "false," must be false with the knowledge of the party making the statement and with the view of deceiving or misleading.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 729–731, 737, 738, 740–751, 758, 760, 761; Dec. Dig. ⬲407.

For other definitions, see Words and Phrases, First and Second Series, False.]

4. BANKRUPTCY ⬲407—DISCHARGE—GROUNDS FOR DENIAL.

A partnership's failure to keep books of account with intent to conceal its financial condition, and a false statement in writing made by it for the purpose of obtaining credit, did not prevent a discharge of one of the partners, who was not active in the business, did not know what was being done, and was not cognizant of the making of the statement, or the manner in which the books were kept.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 729–731, 737, 738, 740–751, 758, 760, 761; Dec. Dig. ⬲407.]

⬲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Bankruptcy. In the matter of Hannah Josephson and others, individually and as partners under the firm name of Josephsons, bankrupts. On objections to the discharge of the bankrupts. Discharge denied as to two of the partners, and granted one of the partners.

E. B. Hermann, of Roseburg, Or., for bankrupts.

A. N. Orcutt, of Roseburg, Or., and Sidney Teiser, of Portland, Or., for trustee and objecting creditors.

WOLVERTON, District Judge. This matter comes up on objections to the discharge of the bankrupts; the bankrupts consisting of Hannah Josephson, Sam S. Josephson, and Julien Josephson, doing business under the firm name of Josephsons. Specifications were filed by Pontiac Shoe Manufacturing Company, Dougherty Shoe Company, and Krausse Bros. The specifications set forth that the bankrupts obtained property on credit, through material false statements in writing made to each of the above-named firms, and to the firm of Bradshaw Bros., and that, with intent to conceal their true financial condition, the bankrupts have destroyed, concealed, or failed to keep books of account or records from which such condition might be ascertained.

The cause was referred to C. L. Hamilton, referee in bankruptcy, to hear and take the testimony and to report his findings and recommendations. This the referee has attended to, and has reported recommending that a discharge be not allowed as to each of the members of the firm. The report shows, among other things, that in the management of the firm's business Julien Josephson had charge of the correspondence, paying bills, etc., and that Sam S. Josephson had charge of the sales department, but that both were actively engaged in carrying on and transacting the business of the firm; that Hannah Josephson was not an active member of the firm, and had been absent for the greater portion of the time for the past four years prior to closing the business, and knew little of the affairs of the firm, and was not actively engaged in carrying on the business thereof.

[1] As it relates to the keeping of books, the referee makes this finding:

"That about two years previous to their closing business they discontinued doing a general credit business and went onto a cash basis, and from that time on until they filed their petition in bankruptcy the only record of the business kept was that afforded by a daily balance system, as shown by the National Cash Register sales slips. A record of their indebtedness to wholesale houses from whom they purchased stock was kept by filing the invoices or bills for reference, and prior to closing business they entered up these invoices or bills in a book, for the purpose of referring to their creditors in making up the schedules in bankruptcy, and after entering up said bills in the book they were either mislaid or destroyed."

This finding, read in connection with the evidence, shows its intendment to be that, prior to closing the business—that is, when it was found that bankruptcy was the inevitable result—they entered up these invoices, etc.; so that there was no entering up of the invoices or bills in any book during the continuance of the business. Now, the question arises whether, under Bankruptcy Act, § 14b (2), the bankrupts have, with intent to conceal their financial condition,

destroyed, concealed, or failed to keep books of account or records from which such condition might be ascertained.

The intent spoken of in this clause of the act need not be proven by absolute showing that the party, in failing to keep books, designed to conceal assets or fail to disclose the state of his business; but it may be deduced from all the facts and circumstances in the case and thus ascertained and determined. The well-established rule is often invoked in determining the intent, namely, that a man must be presumed to intend the natural consequences of his act. Now, from the findings of the referee it would appear that this firm kept absolutely no books at all, and the only record that they had for reference was the register record of cash receipts. The invoices showing the purchases were simply filed for reference, but during the course of the business, no record—book record or otherwise—was made of these bills, so that there were absolutely no books by which the condition, financial or otherwise, of the firm could be ascertained or kept; and I think the inference is so strong as to admit of no cavil that this firm failed to keep books with the purpose of covering their assets, so that they might not be definitely known to their creditors, or to those whose business it might become to look into their financial condition. This conclusion is borne out upon authority. See In re Newbury & Dunham, 209 Fed. 195, 126 C. C. A. 207; In re Goldich (D. C.) 164 Fed. 882.

[2] As it relates to the charge of obtaining money or property on credit upon a material false statement in writing, the claim that such credit was obtained from Pontiac Shoe Manufacturing Company, Dougherty Shoe Company, and Bradshaw Bros. has not been proven. But it is shown that the firm, acting through Julien Josephson, made a statement in writing to Krausse Bros., on February 7, 1913, in which they stated that their stock of merchandise on hand at the time amounted to $33,467, and that their other personal property, real estate, and fixtures amounted to $20,300, and that their liabilities were $20,563, leaving a net surplus of $33,204; that the following claims for indebtedness existing at the date of making such statement were not included therein, namely: Mrs. Vera Josephson, wife of Julien Josephson, $1,500; Mrs. P. A. Kerr, sister-in-law of Julien Josephson, $1,500; H. Little, $3,000; H. Wollenberg, $750; and Jos. Micelli, $400—aggregating $7,150. The referee makes this further finding:

That "in the schedules as filed the indebtedness is given as unsecured claims, $28,786.99; secured claims, $20,590—making a total indebtedness of $49,376.99. In addition to the above, there has been filed and allowed, up to and including the 23d of April, 1914, additional unsecured claims amounting to $9,597.56, making the total indebtedness $58,974.55."

This latter finding relates to the showing made at the time of filing the schedule in the bankruptcy court, and from this finding it appears that there was a grossly incorrect statement of the financial condition of the firm made to Krausse Bros., and the question arises whether this act upon the part of the bankrupts will defeat their right of discharge. That the statement was incorrect and misleading there is no shadow of doubt, but whether it was false in the sense of the

statute is a legal question, to be determined upon a proper construction of the law.

[3] The word "false" must be construed to mean false with the knowledge of the party making the statement, and further with the view of deceiving or misleading. Such a construction has been given to it by the Circuit Court of Appeals for the Third Circuit. Gilpin v. Merchants' Nat. Bank, 165 Fed. 607, 91 C. C. A. 445, 20 L. R. A. (N. S.) 1023. See, also, In re Arenson (D. C.) 195 Fed. 609, 612. But in this case, as in the previous, where the party has failed to keep books with intent to conceal, etc., the intent may be deduced from all the facts and circumstances attending the transactions; and, so applying the law, I am convinced that the statement to Krausse Bros. was made knowingly, and with the view of obtaining credit through a deceitful statement made.

[4] I am therefore impelled to affirm the finding and recommendation of the referee as it relates to the partners Julien Josephson and Sam S. Josephson; but as Hannah Josephson was not active in the business, and knew nothing of what was being done, and especially was not cognizant of the making of the false statement or the manner in which the books were kept, she should be granted her discharge, and such will be the order of the court.