**In re Gerald F. GEYEN, and Fayrene Geyen, Debtors.**

**James GREEN, and Zella Green, Plaintiffs,**

**v.**

**Gerald F. GEYEN, and Fayrene Geyen, Defendants.**

Bankruptcy No. 480–00353–LC.

Adv. No. 480–0066–LC.

United States Bankruptcy Court, W. D. Louisiana.

May 12, 1981.

Joy Clemons, Lake Charles, La., for debtors, Gerald Geyen and Fayrene Geyen.

Raleigh Newman, Lake Charles, La., for plaintiffs, James Green and Zella Green.

OPINION

RODNEY BERNARD, Jr., Bankruptcy Judge.

Hearing was held on January 8, 1981 on a complaint of James Green and Zella Green,

plaintiffs herein, objecting to the dischargeability of a debt owed to them by Gerald Geyen and Fayrene Geyen, the debtors herein. The plaintiffs contend the debt owed to them should not be discharged since it amounted to a taking by fraudulent representations.

Gerald Geyen and Fayrene Geyen, the debtors herein, filed a joint petition for relief under Chapter 7 of the Bankruptcy Code. James Green and Zella Green, the plaintiffs herein, were listed as creditors in the Schedule of Liabilities filed by the debtors in their Chapter 7 proceeding. When the debtors filed their petition there was already pending in Lake Charles City Court a suit for this debt. Upon the filing of the debtors petition, this court took jurisdiction of the suit filed by the Greens.

The cause of action giving rise to the aforementioned suit is based on fraud. Under 11 U.S.C. 523(a)(2)(A) of the Bankruptcy Code, a debt based on fraud or fraudulent representations is not dischargeable in bankruptcy. 11 U.S.C. 523(a)(2)(A) reads as follows:

(a) A discharge under section 727, 1141, or 1328(b) or this title does not discharge an individual debtor from any debt—
(2) for obtaining money, property, services or an extension or renewal or refinance of credit by—
(A) false pretenses, a false representation, or actual fraud, other than a statement representing the debtor's or an insider's financial condition...

Factually, the Greens gave Mr. Geyen $2,500.00 to start an accounting and tax service in Lake Charles, Louisiana. Mr. Geyen discussed the business proposition with Mrs. Green at the Green's Lake Charles residence. At the time of the discussion Mrs. Diana Lafleur and Mrs. Lillian Frank were present at the Green's home. Mr. Green did not initially discuss the matter with Mr. Geyen. Mr. Green contends that he was without much formal education and that his wife handled most of the family business since she had a college education. According to Mrs. Green's testimony, Mr. Geyen was to put up $7,000.00 of his own money along with the Green's $2,500.00; the business would be "backed" by Mr. Phil Pittman, a respected businessman in the Lake Charles area; the Greens would receive 25% of the business and would have access to the books and records of the business at any time. When Mr. Green returned home from work, Mrs. Green discussed the business investment with him. Mr. Green testified that he did not want to invest in the business, but when he was told that Mr. Pittman would be backing this business he agreed to invest since the Green's have dealt with Mr. Pittman in insurance matters and found him to be a honest and sound business man. At this point the Greens and Mr. Geyen went to the bank where the Greens had their savings account. While Mrs. Green waited in the car, Mr. Green withdrew the $2,500.00 and gave it to Mr. Geyen who opened a business account at the same bank.

The Greens now contend that Mr. Pittman had no connection with the tax and accounting service, and never stated to anyone that he would back Mr. Geyen in this or any business. The $7,000.00 that Mr. Geyen was to put into the business never materialized, no books or records were kept on the business and every request to examine any records of the business was refused by Mr. Geyen. Additionally, a written partnership agreement presented to the Greens contained 12½% rather than the 25% of the business promised. These allegations made by the Greens are the basis of their objection to the discharge of the $2,500.00 debt owed to them.

█ In order to prevail, it is incumbent on the plaintiffs to prove all the elements and allegations of the fraudulent conduct. *In re Polivnick*, 8 B.R. 621 (Bkrtcy.1981). The fraudulent conduct must have been knowingly and intentionally made. *In re Brooks*, 4 B.R. 237 (Bkrtcy.1981). The creditors must have relied on the false representation and the reliance must have been reasonable. H.Rept.No. 95–595, 95th Cong., 1st Sess. (1977) 363, U.S.Code Cong. & Ad-

min.News 1978, 5963. Also see *Coll. on Bankruptcy* 523.08(4).

Further,

(I) if the property was obtained prior to the making of any false representations, subsequent misrepresentations will have no effect upon the discharge of the debt.

A mere promise to be executed in the future is not sufficient to make a debt nondischargeable, even though there is no excuse for the subsequent breach. *Coll. on Bankruptcy*, supra.

■ Each of the incidents of fraudulent representations will be addressed here individually. First, is the alleged backing by Mr. Pittman. This guarantee of backing made by Mr. Geyen was absolutely false. Regardless of the falsity of this statement, this court finds that reliance by the Greens was anything but reasonable. Mr. and Mrs. Green knew Mr. Pittman very well and had conducted business with him for some time. It would be unreasonable for the Greens to use this as the major reason for their investment without contacting Mr. Pittman and asking him about his relationship with Mr. Geyen, his business proposition, or what type of "backing" he planned to give the Geyen business.

The second incident of misrepresentation involves the percentage of the business the Greens were to receive for their investment. In the negotiations, Mr. Geyen said they would receive 25%. In the partnership agreement 12½% was given. Here too, it is unclear whether an actual intentional misrepresentation occurred. Testimony at the hearing indicated that Mr. Geyen was to open two separate businesses, a tax service and a supply company. The $2,500.00 was the total investment in both companies, 12½ % in each of the companies for a total of 25% of both businesses. The problem was that the only partnership agreement presented to them was for the tax service which represented only half of their total investment. This does not amount to a fraudulent representation that was intentionally and knowingly made.

The third allegation involves Mr. Geyen's $7,000.00 contribution to the business. Here again, the plaintiffs have not proved that this was not done. Many of the records of the business were destroyed in a flood. Mr. Geyen's testimony indicates that he put up $3,000.00 of his own money and $3,500.00 from a personal loan. Mr. Geyen brought into court records of disbursements made for office supplies and salaries. The moneys put up by Mr. Geyen were not necessarily put into the business account. Mr. Geyen did not put forth evidence of the deposits supposedly made by him, nevertheless, it is the plaintiffs' burden to prove all their allegations. They must prove Mr. Geyen did not put up the moneys he was supposed to and that he knowingly and intentionally misrepresented his share of the investment in the business. The plaintiffs did not prove this.

Lastly, the plaintiffs allege after they made the investment, Mr. Geyen gave them the "run around" and never allowed them access to the books and records. Mr. Geyen testified that he had brought the books over to the Green's a couple of times but they were either too tired to look through them or did not want to look through them. The Greens testified that Mr. Geyen would make appointments with them to see the books and would not show up, or was not at the office when they came to see the books. Generally, the testimony is contradictory but it does not appear that Mr. Geyen knowingly and intentionally meant to keep the Greens from looking at the records. In order for this to be a false representation, the promise to view the books must have been made by Mr. Geyen with no intention to ever allow the Greens to see the books and with the knowledge and intent to deceive them. *In re Josephson*, D.C.Or., 229 F. 272.

It does not appear that the Greens have proven that there was an actual fraudulent intent at the time of obtaining the money in any of their allegations.

In order to prevail under 11 U.S.C. 523(a)(2)(A), a creditor must prove that a debtor knowingly and fraudulently made

false representations to the creditor in order to obtain the creditor's money. Subsequent conduct contrary to a former representation by the debtor does not necessarily establish the original representation to have been false. *In re Boese*, 8 B.R. 660 (Bkrtcy.1981).

In light of the above conclusions, and the plaintiffs' failure to prove their allegations of fraud or fraudulent representations within the requirements of 11 U.S.C. 523(a)(2)(A), the debt owed to the Greens by Mr. and Mrs. Geyen is hereby declared dischargeable in bankruptcy.

Judgment in accordance with the above will be signed upon submission. All costs of this proceeding is to be paid by the plaintiffs.