**In the Matter of Clarence A. GRAY, Debtor.**

**MODERN DISTRIBUTORS, INC., Plaintiff,**

v.

**Clarence A. GRAY, Defendant.**

**Adv. No. 81–0255.**

United States Bankruptcy Court, W. D. Wisconsin.

Aug. 23, 1982.

David J. Ross, Bewick, Ross & Lister, Evansville, Wis., for plaintiff.

David C. Moore, Brennan, Steil, Ryan, Basting & MacDougall, S. C., Janesville, Wis., for defendant.

DECISION ON SUMMARY JUDGMENT

ROBERT D. MARTIN, Bankruptcy Judge.

This adversary proceeding is before the court on debtor-defendant Clarence A. Gray's motion for summary judgment. Two issues are presented. First, plaintiff Modern Distributors, Inc. has claimed the debt owed to it is not dischargeable under 11 U.S.C. § 523(a)(2)(B). Second, Gray has counterclaimed for the return of three vehicles which had been delivered to Modern Distributors under an oral agreement that they would be sold and used to satisfy part of Modern Distributors' judgment against Gray.

Considering first the dischargeability issue, the following facts are not in dispute, according to the joint pre-trial statement:

1. Modern Distributors, Inc., is a Wisconsin corporation, engaged in the sale of building products at wholesale. Its business is located at 18 South Park Street, Madison, Wisconsin.

2. Clarence A. Gray operated a construction business known as Badgerland Builders from March 19, 1975 until August of 1979. From August of 1979 until September 9, 1981, Gray and his son, Dan Gray, were engaged as partners in a construction business known as American Insulation and Home Improvements.

3. On or about April 28, 1980, Dan Gray, on behalf of American Insulation and Home Improvements requested Modern Distributors to sell the partnership building materi-

als, on credit, for use by the partnership in its construction business. Prior to extending credit, Modern Distributors required that a financial statement for American Insulation and Home Improvements be submitted. The financial statement attached to the plaintiff's complaint in this action was then filed with plaintiff on April 28, 1980.

4. The financial statement was filed with plaintiff for the purpose of inducing plaintiff to extend credit to American Insulation and Home Improvements. The financial statement was signed by Dan Gray and submitted to plaintiff by Dan Gray.

5. Modern Distributors furnished goods to American Insulation and Home Improvements on credit on two different occasions. On the second occasion the materials were not paid for, despite several demands for payment by plaintiff.

6. Modern Distributors obtained a judgment against the debtor and Dan Gray on their unpaid account in Rock County Circuit Court on December 30, 1980, in the amount of $2,109.33, on which the pre-petition interest is $190.00 and costs are $39.60, for a total judgment of $2,338.74.

The following facts are in dispute:

1. Whether Clarence Gray was aware of the contents of the financial statement at the time it was submitted.

2. Whether the statement is false.

3. If it is false, whether it is materially false.

4. Whether Modern Distributors relied on that statement.

5. If so, whether the reliance was reasonable.

6. Whether Gray published or caused the statement to be published with intent to deceive.

 Summary judgment is only appropriate where there is no genuine issue of material fact. *Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972), *Mintz v. Mathers Fund, Inc.*, 463 F.2d 495 (7th Cir. 1972). Obviously not every fact is material, and materiality depends on the substantive law. Thus, if disputed facts, regardless of which way they are resolved, would not affect the outcome of the case, they are not material and do not preclude summary judgment. What this means in the present case is that if a debtor cannot be denied discharge of a debt because of the financial statement submitted by his partner, then summary judgment is appropriate, because none of the disputed facts are material.

11 U.S.C. § 523(a)(2)(B) provides:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

Under the Bankruptcy Act, there were two provisions concerning the use of a false financial statement. Section 14c made the publishing of a materially false financial statement a ground for denial of discharge.

The court shall grant the discharge unless satisfied that the bankrupt has

(3) while engaged in business as a sole proprietor, partnership, or as an executive of a corporation, obtained for such business money or property on credit or as an extension or renewal of credit by making or publishing or causing to be made or published in any manner whatsoever a materially false statement in writing respecting his financial condition or the financial condition of such partnership or corporation.

Section 17a provided that a discharge would not discharge any liabilities based on a false financial statement:

§ 17. Debts Not Affected by a Discharge. a. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as

(2) are liabilities for obtaining money or property by . . . on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive. . . .

A major difference between these sections is that section 14 applies only to a bankrupt in business. *In Re Ballard*, 6 C.B.C. 664, 671 (Bkrtcy.E.D.Tenn.1975). In enacting the new Code, Congress chose to remove the use of a false financial statement as a ground for denying discharge but to retain it as a ground for determining that a particular debt is not dischargeable.

I have been able to find only one case decided under the new Code which considers the question of denying the debtor's discharge because of another's actions, *In Re Warren*, 7 B.R. 571 (Bkrtcy.N.D.Ala. 1980). The debtor's partner paid for materials purchased for the partnership with a check which was subsequently dishonored. The court found:

> The question, however, appears to be fairly well settled and to the effect that a debt arising from the obtaining of goods by false pretenses of a partner, acting for the partnership, constitutes a claim which is not dischargeable in bankruptcy as to the misbehaving partner, the partnership, or an innocent partner. 7 B.R. at 573 (footnote omitted).

The court did not further discuss this rule.

Two other fairly recent cases consider dischargeability when the act complained of was not done by the debtor. Both were decided under the prior law and neither involves a false financial statement. *In Re Moore*, 1 B.R. 52 (Bkrtcy.C.D.Cal.1979) concerns the denial of discharge for a willful and malicious injury under section 17a(8). Bankrupt's agents and employees had violated the civil rights of four families by evicting them because of race. The court held:

> Although there has been no showing that defendant Patrick Moore personally engaged in the reprehensible practices of racial discrimination practiced by the resident managers, as overall manager of Moore Development Company, he is responsible for the acts of his agents and employees. . . . 1 B.R. at 53 (citation omitted).

In *In Re Rutkowski*, 2 B.R. 677 (Bkrtcy.S.D. N.Y.1980) the bankrupt's partner willfully and maliciously converted to his own benefit a mortgage which he had agreed not to record or sell. The bankrupt, himself, did not actively participate in the conversion. The court found that the bankrupt did not intentionally and wrongfully participate in the conversion and should not be denied discharge.

The recent cases do not demonstrate a clear or consistent rationale. A review of earlier cases reveals that the courts were quite hostile towards bankrupts whose partners had made false financial statements. Some general, but confused, principles emerge.

1. Inactive partners with no knowledge that a financial statement had been made, much less that it was false, were generally not denied a discharge under section 14c, but were not able to discharge the particular debt which arose from the false financial statement. *In Re Lovich*, 117 F.2d 612 (2nd Cir. 1941); *In Re Josephson*, 229 F. 272 (D.Or.1916). The extent of the partner's noninvolvement ranges from a mere ownership interest in *Josephson*, to involvement only in the selling end of the business in *Frank v. Michigan Paper Co.*, 179 F. 776 (4th Cir. 1910).

The distinction between denying discharge and determining a particular debt to be nondischargeable appears to be based on two considerations. First, the courts considered the different natures of a denial of discharge and nondischargeability of a debt. A denial of discharge was based on "criminal conduct, or actual dishonesty quasi-criminal in nature." *Hardie v. Swafford*

*Bros. Dry Goods*, 165 F. 588, 590 (5th Cir. 1908). It is a harsh sanction which benefits all creditors, not just those which were harmed by the false financial statement. *In Re Maloof*, 2 F.2d 373, 374 (N.D.Ga.1924). Finally, the courts felt justified in denying an innocent partner discharge of a debt, because he should not be allowed to repudiate the means by which he was benefited. *Maloof* at 374. The second reason for distinguishing the two is based on the different language of the sections. The language in section 14c required the active involvement of the bankrupt. He must have made or published or caused to be made or published the false financial statement. Section 17a simply provides that debts which are liabilities for obtaining money or property by means of a false financial statement shall not be discharged. Thus, under section 17a the conduct prohibited was not identified to the bankrupt. These two lines of reasoning cut both ways, when applied to the present law. Section 523(a) provides for nondischargeability of particular debts, not discharge of the debtor. In this sense, it is more like section 17a. However its language is closer to that of section 14c, as it speaks in terms of the debtor's acts, not simply of liabilities obtained in certain ways.

2. Where the bankrupt is an active partner and knew that a financial statement had been issued, he may be denied discharge even though he had no knowledge that the statement was false if he was so negligent that it approaches bad faith. In *In Re Savarese*, 209 F. 830 (2nd Cir. 1913) the bankrupt's clerk prepared the false financial statement. The bankrupt admitted seeing copies of the statement. The Court of Appeals held that because the falsities of the statement were so glaring, the bankrupt was, at least, recklessly negligent and should be denied his discharge. The court explained that:

> If such accounts as his are to be adopted, it will be made very easy for embarrassed merchants to close their eyes to fraudulent acts of their servants by which they profit, and then, if bankruptcy ensues, obtain the discharge which is intended to enable the merely unfortunate debtors to start life anew. 209 F. at 832.

Also, in *In Re Josephson, supra*, although one inactive partner was granted a discharge, another partner, who did participate in managing the firm was denied discharge, even though he was not involved in making the false financial statement.

■ Some courts have used agency theory to hold one partner liable for the acts of another. In *In Re Fineberg*, 36 F.2d 392 (W.D.N.Y.1929) the false statement was prepared by a bookkeeper. The member of the partnership who signed the statement had actual knowledge that it was materially false. The court denied both partners discharge because:

> Each partner manifestly is the agent of the other, and each is liable for the acts of the other, and, as individual members separately liable for the debts of the partnership, I perceive no substantial reason for discharging the partnership or individual members from their partnership debts. 36 F.2d at 393.

Of course none of these cases is directly applicable to the present case because of the change in the law. In particular, the addition of the intent to deceive language of 11 U.S.C. § 523(a)(2)(B) imposes a greater burden on the creditor objecting to dischargeability than existed in the earlier cases. However, the current law would seem at a minimum to support holding a debtor liable where he had seen the financial statement and the errors were such that he knew or should have known of their falsity. The debtor's failure to notify the creditors of the falsity or his failure to prevent the statement from being issued would be evidence of an intent to deceive. The contested facts related to the debtor's knowledge and intent, the statement's falsity, and Modern Distributors reliance are therefore material. Because of the existence of genuine issues of material fact, summary judgment on the issue of dischargeability must be denied.

The second issue on motion for summary judgment is Gray's counterclaim against

Modern Distributors for the return of a 1974 Dodge, a 1977 Dodge, and a 1974 Chevrolet. Again, the standard for granting summary judgment is the absence of a genuine issue of material fact.

The following facts are uncontested.

1. Modern Distributors obtained a judgment against the debtor and Dan Gray on their unpaid account in Rock County Circuit Court on December 30, 1980, in the amount of $2,109.33, on which the pre-petition interest is $190.00 and costs are $39.60, for a total judgment of $2,338.74.

2. Execution upon the judgment against the property of the judgment debtor, Clarence A. Gray, was issued on January 15, 1981 and delivered to the sheriff of Rock County. Gray is currently a resident of Rock County, as he was at the time execution was issued. The sheriff duly returned the execution into court wholly unsatisfied.

3. Modern Distributors commenced a supplementary proceeding against Gray by service on him on April 7, 1981 of an Order Commanding Appearance before the Honorable Thomas F. Berg, a Rock County Court Commissioner.

4. On April 14, 1981 Gray appeared before Mr. Berg and was examined by David J. Ross, one of Modern Distributors' attorneys. During the examination Gray produced titles to a 1974 Dodge Monaco car, a 1974 Chevrolet pick-up truck and a 1977 Dodge Monaco car.

5. Gray endorsed the titles in blank and delivered them to Mr. Ross with the understanding that they were to be sold, and the proceeds applied toward payment of the judgment.

6. On or about April 16, the two Dodge automobiles were delivered by Gray to Helgesen's Inc. in Evansville, Wisconsin where they have been continuously held for sale to the public until the present.

From the pre-trial statement there appear to be no disputed facts concerning the automobiles. Modern Distributors is claiming either an ownership interest in the vehicles or a lien upon them. Gray argues that his agreement with Modern Distributors created a factoring or consignment arrangement.

The first question to address is whether the transaction between Gray and Modern Distributors meets the formal requirements for transfer of ownership of a motor vehicle. In Wisconsin, Wis.Stat. § 342.15 (1979–1980) governs the transfer of title:

> (1)(a) If an owner transfers an interest in a vehicle, other than by the creation of a security interest, the owner shall at the time of the delivery of the vehicle, execute an assignment and warranty of title to the transferee in the space provided therefor on the certificate, and cause the certificate to be mailed or delivered to the transferee, except that if the vehicle being transferred has been junked, the owner shall return the certificate to the department in accordance with s. 342.34.

In *Knutson v. Mueller*, 68 Wis.2d 199, 228 N.W.2d 342 (1975) the Wisconsin Supreme Court stated that an endorsement in blank is sufficient to comply with Wis. Stat. § 342.15:[1]

> Prior to the adoption of sec. 342.15, Stats., the section governing this matter was sec. 342.18(1)(a), Stats.1963, which explicitly required the owner, in addition to signing the title, to 'Endorse upon the certificate of title in the spaces provided therefor the name and address of the transferee.' Sec. 342.15 now contains no such explicit command. We conclude, therefore, that by signing the certificate and transferring it to her husband as an agent for Mueller-Krus, Mrs. Mueller warranted title and assigned her ownership interest in compliance with statutory requirements. An endorsement in blank and delivery to a transferee is sufficient to convey ownership rights in commercial paper, warehouse receipts and bills of lading, and investment securities. We see

---

1. This discussion is not part of the holding as the court found the issue not to have been preserved for appeal.

no reason why a similar principle should not apply here. 68 Wis.2d at 211–212, 228 N.W.2d 342 (footnotes omitted).

*Knutson* involved the question of automobile ownership in a damage action. In *Bacheller v. Employers Mutual Liability Insurance Company*, 93 Wis.2d 564, 287 N.W.2d 817 (1980), *modified per curiam* 93 Wis.2d at 573, 287 N.W.2d 817, the court found the standard for passing title to be the same in a commercial context as in a damage action. The court found that in either situation compliance with Wis.Stat. § 342.15 conclusively shows a transfer of title, but such a transfer can occur without compliance. In the present case, then, it appears that Gray accomplished a transfer of the automobile to Modern Distributors as payment in kind, in partial satisfaction of the debt owed.

Gray's argument that the transaction was actually a consignment or factoring arrangement is untenable. Gilmore defines such arrangements:

> Under a 'true' consignment, the owner of goods delivers them to a consignee for sale. If the consignee sells them, he must account to the owner-consignor for the proceeds of sale less his commission. If he does not sell the goods, he must return them, but he does not in any case become liable to the consignor for the price of the goods if they are not sold. Title to the goods remains in the consignor during the consignment and passes, when the goods are sold, directly to purchaser. During the nineteenth century this method of merchandising was known as factoring.... 1 G. Gilmore, *Security Interests in Personal Property* § 3.5 (1965).

The agreement between Gray and Modern Distributors does not fit this definition. Title has passed from Gray to Modern Distributors. Modern Distributors is not obligated to return the cars if they are not sold, nor does it have to turn over the proceeds of their sale to Gray. Modern Distributors must of course reduce the judgment and its claim by the value of the property delivered to it as payment in kind.

Judgment may be entered in accordance with this decision.