In re Michael Jeffrey CALHOUN,
Debtor.

**FEDERAL DEPOSIT INSURANCE COR-PORATION, Receiver for the National Bank of Washington, Plaintiffs,**

v.

**Michael Jeffrey CALHOUN, Defendant.**

Bankruptcy No. 90–00974.
Adv. No. 91–0011.

United States Bankruptcy Court,
District of Columbia.

Sept. 20, 1991.

Steven H. Greenfeld, Gins & Seeber, P.C., Washington, D.C., for defendant.

James A. Treanor, III, Dow, Lohnes & Albertson, Washington, D.C., for plaintiffs.

## DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

S. MARTIN TEEL, Jr., Bankruptcy Judge.

The plaintiff, Federal Deposit Insurance Corporation (FDIC), which is acting as receiver for the National Bank of Washington (NBW), has sued the debtor Calhoun as defendant in this adversary proceeding for a determination that its claim against him is non-dischargeable under 11 U.S.C. § 523(a)(2)(A) or (B). The court will grant Calhoun's motion to dismiss, with leave to amend, because the FDIC's complaint fails to allege sufficient facts, which if proved, would demonstrate actual reliance as required under 11 U.S.C. § 523(a)(2)(A) or (B). The court rejects, however, Calhoun's contention that the fraud of his law partnership cannot be imputed to him.

### Facts

The complaint alleges the following facts. The debtor was a partner of Finley, Kumble, Wagner, Heine, Underberg, Manley, Meyerson & Casey ("Finley, Kumble") a New York general partnership, when NBW made a $10 million dollar loan to Finley, Kumble on or about June 3, 1987. The full principal amount of the loan, and the interest on the loan remains outstanding.

On February 24, 1988, an involuntary petition was filed under chapter 7 of the Bankruptcy Code against Finley, Kumble, in the Southern District of New York. The case was converted to a chapter 11 case by an order of that court dated March 4, 1988.

The debtor was not involved in negotiating or securing the loan, but he did materially benefit from the proceeds of the loan as a general partner of the law firm. He is jointly and severally for the Finley, Kumble loan and filed his own bankruptcy case in 1990.

Finley, Kumble intended to, and did deceive NBW as to its financial condition and stability. Finley, Kumble made false representations with respect to pending litigation and dissension within the firm. In addition Finley, Kumble did not disclose a true and accurate presentation of the firm's financial condition at the time of the loan, including information as to the firm's work in progress and accounts receivable. The FDIC, as successor to NBW was injured by the fraud and deception of the debtor's partners at Finley, Kumble.

There is no allegation that in fact NBW relied on Finley, Kumble's misrepresentations in making the loan. Rather, the plaintiff alleges "as a matter of law, a conclusive presumption exists that NBW relied upon the accuracy of the representations...." Compl., par. 15.

### Standard for Dismissal

The debtor argues that the complaint must be dismissed based on the failure of the FDIC to allege that NBW relied on the allegedly fraudulent assertions and financial statements of the debtor's partners. The court agrees, rejecting the FDIC's assertion that reliance is deemed present as a matter of law. The debtor also points to the FDIC's failure to allege that the debtor had a fraudulent intent. The court holds that fraudulent intent is imputed to the debtor on the facts alleged.

### Reliance Elements of a § 523(a)(2)(A) or (B) Claim

Reasonable reliance by the auditor is an express requirement of a § 523(a)(2)(B) claim.[1] However, there is no express requirement of reliance under § 523(a)(2)(A). Many courts have assumed that when Congress enacted § 523(a)(2)(A) as part of the new Bankruptcy Code in 1978 it had no intention of changing the common law standards required for a dischargeability complaint under Bankruptcy Act § 17(a)(2). *In re Hunter,* 780 F.2d 1577, 1579 (11th Cir.1986); *In re Kimzey,* 761 F.2d 421, 423 (7th Cir.1985). The courts agree that reliance is required under § 523(a)(2)(A) but are divided over whether the creditor's reliance must be reasonable under § 523(a)(2)(A), as is required under § 523(a)(2)(B). *Compare In re Ophaug,* 827 F.2d 340, 342–43 (8th Cir.1987) (holding that public policy concerns behind § 523(a)(2)(A) do not demonstrate a need for a reasonable reliance requirement); *In re Monahan,* 125 B.R. 697 (Bankr. D.R.I.1991) (reliance need not be reasonable, only actual); *In re Fosco,* 14 B.R. 918, 921–23 (Bankr.D.Conn.1981) (stating that there is little chance that a debtor will be made the unwitting victim of a creditor under § 523(a)(2)(A))[2] *with In re Mullet,* 817 F.2d 677 (10th Cir.1987) (holding that the standard of reasonableness helps to ensure that there exists some basis for relying upon the debtor's representations); *In re Hunter,* 780 F.2d at 1579 (dictum); *In re Kimzey,* 761 F.2d at 423. I need not decide this issue because not even actual reliance is pled.

In sum, actual reliance needs to be pled as part of the creditor's complaint under § 523(a)(2)(A), even if reasonable reliance is not required. For purposes of a complaint under 11 U.S.C. § 523(a)(2)(B),

---

1. Title 11 U.S.C. § 523(a) provides *inter alia:*
   Exceptions to discharge
   (a) A discharge under 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-
   ....
   (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
   (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
   (B) use of a statement in writing—
   (i) that is materially false;

   (ii) respecting the debtor's or an insider's financial condition;
   (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
   (iv) that the debtor caused to be made or published with the intent to deceive.

2. Even in these courts, holding that only actual reliance is required, the reasonableness of the creditor's reliance remains an important factor, however, in determining whether there was actual reliance. *See In re Garman,* 643 F.2d 1252, 1253–57 (7th Cir.1980).

reasonable reliance must be actually pled.[3] The issue thus arises whether the FDIC has pled actual reliance under § 523(a)(2)(A) and reasonable reliance under § 523(a)(2)(B).

### Reliance by the FDIC

In its opposition to the motion to dismiss the FDIC insists that the "FDIC as receiver may, as a matter of law, reasonably rely on the documents in the loan file contemporaneous with the making of a loan...." *In re Smith*, 113 B.R. 297, 306 (Bankr. N.D.Tex.1990) (citing *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942)). According to the FDIC, to hold otherwise would leave the FDIC increasingly vulnerable to secret deals between a bank and a debtor.

■ The purpose of the *D'Oench, Duhme* doctrine, which was essentially codified by 12 U.S.C. § 1823(e), is to protect the FDIC from such secret dealings. Therefore, the FDIC is correct in stating that where a loan document fails to comply with § 1823(e) "the element of reliance required by § 523(a)(2)(A) and (B) is satisfied upon documentary evidence from the debtor's loan file, showing the written terms and conditions of the loan agreement." *In re Figge*, 94 B.R. 654, 668 (Bankr.C.D.Cal. 1988). The test is "whether the note was designed to deceive the creditors of the public authority or would tend to have that effect." *Id.* at 667 (quoting *D'Oench, Duhme*, U.S. 315 at 460, S.Ct. 62 at 681). Accordingly, the FDIC need not prove reliance where the creditor and the debtor have acted jointly with the intent to defraud the banking examiners or the FDIC. *In re Cerar*, 97 B.R. 447, 449 (C.D.Ill.1989).

■ However, there has been no allegation that NBW was a party to Finley, Kumble's fraud, and consequently the *D'Oench Duhme* doctrine is inapplicable in this case. Therefore, the FDIC must plead under § 523(a)(2)(A) and (B) that NBW relied on the fraudulent assertions and financial statements that it received from the debtor's partners and plead that such reliance was reasonable for purposes of § 523(a)(2)(B). Having failed to do so, the complaint is defective with respect to both § 523(a)(2)(A) and (B).

### Imputing Fraud Under § 523(a)(2)(A)

■ The debtor asserts that the FDIC must allege that the debtor was a party to the fraud, knew of the fraud or should have known of the fraud. The courts have split on this issue, but the better rule is that a partner's fraud can be imputed to a debtor regardless of the debtor's actions or knowledge.

As far back as *Stockwell v. U.S.*, 80 U.S. (13 Wall.) 531, 547–48, 20 L.Ed. 491 (1871), the Supreme Court stated "[t]hat as a general rule partners are all liable to make indemnity for the tort of one of their number, committed by him in the course of the partnership business is a familiar doctrine." *Accord, Castle v. Bullard*, 64 U.S. (23 How.) 172, 189, 16 L.Ed. 424 (1859). This is especially true where a debtor has benefited from the fruit of the fraudulent acts, as the FDIC has alleged herein. *Stockwell*, 80 U.S. at 548.

This rule is equally established in the bankruptcy context. In *Strang v. Bradner*, 114 U.S. 555, 5 S.Ct. 1038, 29 L.Ed. 248 (1885), the Supreme Court declared a partner's fraud could be imputed to a debtor to make a debt non-dischargeable under

**3.** Some courts hold that the standard of reasonableness under § 523(a)(2)(B) goes no further than evidence of reasonableness demonstrating actual reliance and absence of bad faith on the creditor's part, essentially, it seems, the type of evidence of reasonableness (*see* footnote 2) that would help carry the day in showing actual reliance under § 523(a)(2)(A). *See In re Phillips*, 804 F.2d 930, 932–33 (6th Cir.1986); *In re Martin*, 761 F.2d 1163, 1166 (6th Cir.1985). Accepting those cases' view of § 523(a)(2)(B), the distinction between a § 523(a)(2)(A) requirement of only actual reliance and the § 523(a)(2)(B) requirement of reasonable reliance would be a distinction with little difference once both sides have presented evidence. That is, the distinction would only be one of an affirmative requirement of pleading and establishing reasonableness versus a requirement of showing actual reliance by negating by the preponderance of the evidence any evidence of unreasonable reliance. I need not decide the measure of reasonableness under § 523(a)(2)(B) for purposes of this motion.

§ 17(a)(2) of the Bankruptcy Act. This is true not only where the debtor did not consent to his partner's fraudulent acts, but where he had no knowledge or reason to have knowledge of these acts. *Id.* at 561, 5 S.Ct. at 1041.

> Each partner was the agent and representative of the firm with reference to all business within the scope of the partnership. And if, in the conduct of partnership business, and with reference thereto, one partner makes false or fraudulent misrepresentations of fact to the injury of innocent persons who deal with him as representing the firm, and without notice of any limitations upon his general authority, *his partners cannot escape pecuniary responsibility therefor upon the grounds that such misrepresentations were made without their knowledge.*

*Id.* (emphasis added). *See also* Story on Partnership, §§ 1, 102–3, 107–8, 166, 168. This rule was restated in *McIntyre v. Kavanaugh,* 242 U.S. 138, 139, 37 S.Ct. 38, 39, 61 L.Ed. 205 (1916), where the Court held that partners were responsible for the torts of their firms committed within the scope of the business, "whether they personally participate therein or not." The Supreme Court has not ruled on this issue since the enactment of the Bankruptcy Code in 1978, but with the exception of only a few decisions which have been sharply criticized, the lower courts have held that the rule continues that fraud can be imputed to an innocent partner regardless of his knowledge or involvement for purposes of 11 U.S.C. § 523(a)(2)(A).

The debtor relies primarily on *Walker v. Citizen State Bank of Maryville, Missouri,* 726 F.2d 452, 454 (8th Cir.1984) (*Walker I*), for the premise that one cannot be charged with the fraud of a partner unless, there is "proof which demonstrates or justifies an inference that the debtor knew or should have known of the fraud." The court in that case went on to say that a debtor who is recklessly indifferent to the

actions of his agents can be charged with the knowledge of those acts. *Id.*

The reasoning of the *Walker I* decision has been the subject of sharp criticism, beginning with the bankruptcy court which heard the case on remand. The bankruptcy court pointed out that the Eighth Circuit erred by applying the standard for a § 727 denial of discharge case to a § 523(a) dischargeability-of-debt case. *In re Walker,* 53 B.R. 174 (Bankr.W.D.Mo.1985) (*Walker II*). *See also BancBoston Mortg. Corp. v. Ledford,* 127 B.R. 175, 184 (M.D.Tenn. 1991); *In re Paolino,* 75 B.R. 641, 649 (E.D.Penn.1987). The *Walker I* court is unpersuasive in relying on cases such as *In re Lovich,* 117 F.2d 612, 614–15 (2d Cir. 1941), dealing with whether the debtor can receive a discharge as opposed to cases dealing with whether particular debts are dischargeable despite the grant of a discharge.

In *In re Futscher,* 58 B.R. 14 (Bankr. S.D.Ohio 1985), the court followed the ruling in *Walker I* and tried to justify the ruling by dividing the § 523(a) exceptions into two broad categories. The first was those that relate to public policy matters (e.g. alimony and child support) which are always non-dischargeable. The second category was those exceptions based on "false and fraudulent acts." *Id.* at 17. The court decided that § 523(a)(2) claims belong in the second category and therefore require proof "that the debtor himself has actively committed an immoral and/or inequitable act." *Id.* This distinction may be aesthetically pleasing, but it is artificial, baseless and "contradicts evidence that Congress did not intend to make major substantive changes in this area." *BancBoston,* 127 B.R. at 184. *Accord, In re Paolino,* 75 B.R. at 646 (holding that § 523(a) is only a slight modification of § 17(a)).

In addition to *Paolino, BancBoston* and *Walker II* numerous other decisions support imputation.[4] *See In re Powell,* 95 B.R. 236, 240 (Bankr.S.D.Fla.), *aff'd,* 108 B.R. 343 (S.D.Fla.1989), *aff'd without*

---

4. This rule has also been used to hold debtors non-dischargeably liable for wilful and malicious injuries committed by their partners. *In*

*re Cecchini,* 780 F.2d 1440 (9th Cir.1986); *In re Kasler,* 611 F.2d 308 (9th Cir.1979).

*opinion,* 914 F.2d 268 (11th Cir.1990) (under general principles of agency law, "the fraud of an agent can be imputed to a principal debtor in order to preclude the discharge of [a debt] based on that fraud"); *In re Warren,* 7 B.R. 571, 573 (Bankr. N.D.Ala.1980) (holding that the general rule is that a debt arising from the fraud of a partner, who is acting within the scope of the partnership, not dischargeable under § 523(a)(2)(A)); *In re Luce,* 109 B.R. 202, 206 (Bankr.N.D.Tex.1989), (partner will be deemed to be acting within the scope of the partnership where he is acting on behalf of the partnership and in the ordinary course of business).

*Imputing Fraud Under § 523(a)(2)(B)*

■ Another decision, *In re Gray,* 22 B.R. 676 (Bankr.W.D.Wis.1982), raised the issue of whether fraud can be imputed to an innocent partner in light of the language in § 523(a)(2)(B)(iv) which requires that the fraudulent statement be one "that *the debtor* caused to be made or published with the intent to deceive ..." (emphasis added). The court in *In re Anderson,* 29 B.R. 184, 191 (Bankr.N.D.Iowa 1983), a § 523(a)(2)(B) case, expanded upon the decision in *Gray,* holding that imputing fraud would contravene Code's policy of relieving the honest debtor. However, the legislative history to the 1978 Bankruptcy Reform Act indicates that Congress intended § 523(a)(2) to modify § 17(a)(2) only slightly. H.R.Rep. No. 595, 95th Cong., 1st Sess. 364 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 78 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5863, 6319. *Anderson* wrongly ignores the legislative history and the cases decided under § 17(a)(2) of the Bankruptcy Act.

Without exception the cases under the Act held that fraud could be imputed for dischargeability purposes to an innocent partner or principal, *In re Paolino,* 75 B.R. at 649. In addition, the Code's requirement under § 523(a)(2)(B)(iv) that the debtor commit positive fraud before a debt can be found non-dischargeable already existed under cases interpreting the Act. *Neal v. Clark,* 95 U.S. (5 Otto) 704, 24 L.Ed. 586

(1887). In *Strang,* the Supreme Court recognized the requirement set out in *Neal,* but held that the positive fraud of a partner should be imputed to a debtor. *Strang,* 114 U.S. at 561, 5 S.Ct. at 1041. According to the Supreme Court, "if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." *Kelly v. Robinson,* 479 U.S. 36, 47, 107 S.Ct. 353, 359, 93 L.Ed.2d 216 (1986). The Court limited the application of *Kelly* somewhat in subsequent decisions, holding that pre-Code practice was significant in *Kelly* "because it reflected policy considerations of great longevity and importance." *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 245, 109 S.Ct. 1026, 1032, 103 L.Ed.2d 290 (1989). Here, there is a long-standing policy of imputing the intentional fraud of a partner to a debtor for purposes of determining the non-dischargeability of debts. Courts "will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure." *Pennsylvania Welfare Dept. v. Davenport,* 495 U.S. 552, ——, 110 S.Ct. 2126, 2128, 109 L.Ed.2d 588, 599 (1990). There is no evidence that Congress intended to abandon *Strang v. Bradner* in enacting § 523(a)(2)(B). *In re Paolino,* 75 B.R. at 646.

I am persuaded to follow *Paolino* additionally because it would be anomalous to allow imputation of fraud for purposes of § 523(a)(2)(A) but not for § 523(a)(2)(B). The determination of whether an innocent partner's debt is non-dischargeable based on imputation of another partner's fraud ought not rest on whether the fraud was in the form of a false statement concerning financial condition versus some other fraud unless Congress clearly intended different results.

Although not very persuasive because it failed to acknowledge the difference in statutory language, the court in *In re Cecchini,* 780 F.2d 1440, 1444 (9th Cir.1986), held an innocent partner liable by way of imputation of his partner's willful and malicious conduct even though § 523(a)(6) expressly requires the willful and malicious

injury be "by the debtor." [5] Bankruptcy Act § 17(a)(8), in contrast, did not include that language.

The *Anderson* decision is an attempt to avoid the harsh result that the law currently requires. Its holding seems intuitively correct, but it does not comport with the current state of the law, and it "[does] not articulate a persuasive basis for disregarding binding pre-Code precedent." *Paolino*, 75 B.R. at 641. Therefore, the fraud of a partner can be imputed to an innocent partner for purpose of § 523(a)(2)(B) as well.

### Conclusion

Here the FDIC has alleged that the debtor's partners committed fraud with the requisite intent to satisfy both § 523(a)(2)(A) and (B). In addition, the fraud was committed within the scope of the partnership such as to impute the fraud to the debtor. The FDIC's failure to allege that NBW actually relied on the representations is, however, a fatal flaw for purposes of § 523(a)(2)(A) and (B).

For the reasons stated above, it is thus

ORDERED that the motion to dismiss is granted without prejudice with respect to all claims. It is further

ORDERED that the plaintiffs shall file an amended complaint within 10 days of the entry of this order. It is further

ORDERED that the defendants shall respond to the plaintiff's amended complaint within 10 days of service of the amended complaint.

---

**5.** The court in *In re Kay*, 60 B.R. 174, 176 (Bankr.C.D.Cal.1986), noted that § 523(a)(2)(B) requires specific acts by the debtor, which was not an express requirement of Bankruptcy Act § 17(a)(2). Nevertheless, it felt bound by *In re Cecchini* to allow imputation.