**In re Milton Lowell GUSE, Debtor.**

**W–V ENTERPRISES, INC., and E. Michael Wayland, assignees of North Kansas Savings Association, Plaintiffs,**

**v.**

**Milton Lowell GUSE, Defendant.**

**Adv. No. 88–4128–172.**
**Bankruptcy No. 88–40824–172.**

United States Bankruptcy Court,
E.D. Missouri, E.D.

Feb. 19, 1993.

Charles D. McAtee, E. Lou Bjorgaard Probasco, Eidson, Lewis, Porter & Haynes, Topeka, KS, Scott Greenberg, Clayton, MO, for W–V Enterprises, Inc. and E. Michael Wayland.

Norman W. Pressman, St. Louis, MO, for Otto and Marlene Gestring, Sr.

Rexford H. Caruthers, St. Louis, MO, for George M. Croft.

Richard J. Scheffler, St. Louis, MO, for Milton Guse.

Robert J. Blackwell, St. Louis, MO, trustee.

William T. Weidle, Jr., St. Louis, MO, for Imendia Investors, S.A.

David R. Human, Clayton, MO, for Community Federal.

## MEMORANDUM

JAMES J. BARTA, Bankruptcy Judge.

The Plaintiffs as assignees of North Kansas Savings Association, filed separate Adversary Proceedings against this Debtor, and against another Chapter 7 Debtor, George M. Croft (Adversary Proceeding No. 88–4127), alleging that the debts owed are not dischargeable pursuant to Section 523(a)(2)(A) of Title 11 of the United States Code. With respect to the legal theory of the Plaintiffs' case, the Complaint is almost identical in each proceeding. The factual circumstances of each case are substantially similar except that certain of the debts are based on individual notes that were executed at different times. In the interest of economy, the trials of the two Complaints were consolidated to the extent possible. Therefore, although separate Memoranda and Orders are being entered in these separate adversary proceedings, many of the factual and legal determinations are identical.

This is a core proceeding pursuant to Section 157(b)(2)(I) of Title 28 of the United States Code. The Court has jurisdiction over the parties and this matter pursuant to 28 U.S.C. §§ 151, 157 and 1334, and Rule 29 of the Local Rules of the United States District Court for the Eastern District of Missouri.

This Memorandum contains the final findings of fact and conclusions of law of the Bankruptcy Court.

Milton L. Guse and George M. Croft, Debtors, are chiropractors. Dr. Guse has been in practice since 1965 and Dr. Croft has practiced since 1957. In about December, 1980, Dr. Guse attended a meeting in St. Louis that was intended "to put together investments to support entertainers such as a proposed Waylon Jennings concert". *Trial Transcript*, April 24, 1989, pp. 10–11. Dr. Guse and several other chiropractors had been invited to attend the meeting by Dr. Croft. Dr. Guse stated that this was his first meeting with Ron Burnett ("Burnett"), the man who was looking for investments for entertainers.

Shortly after this first meeting, Dr. Guse gave Ron Burnett $1,000.00 as an investment in the Waylon Jennings concert. He got his $1,000.00 investment back from Burnett plus a $1,000.00 profit. *Trial Transcript*, April 24, 1989, p. 12. During the next several months, Dr. Guse gave Burnett other sums of money for investment purposes: $20,000.00 in about March, 1981 as an investment in a cruise ship; $20,000.00 for an investment in bus/train tours in Canada; and $60,000.00 to promote an activity described as the Calgary Stampede. Dr. Guse made no profit from these last three investments, even though he was led to believe that each would yield a good return. Although not clearly stated in the record, it appears that the principal amounts of these three investments were never returned by Burnett.

Several of the other chiropractors who attended the December, 1980, meeting in St. Louis also gave amounts of money to Burnett for the investments described by Dr. Guse. On at least two of these occasions, however, money that was given to Burnett for a particular project was "channelled" into other ventures. *Trial Transcript*, April 24, 1989, p. 20.

Through Burnett, Dr. Guse was also a participant in a loan from a Canadian bank that was to be used to acquire a business known as the Empire Hotel. *Trial Transcript*, April 24, 1989, p. 25. Dr. Guse also attended other business and social meetings with Burnett; introduced him to officers at his personal bank for the purpose of obtaining money for the cruise ship venture; helped finance a trip to Mexico for an individual who had been introduced to him by Burnett, for the purpose of promoting a cruise ship line for the Mexican government; at Burnett's suggestion, purchased stock in an entity known as Gun International; and also at Burnett's direction, and as part of the arrangement to purchase the Empire Hotel, executed certain promissory notes from the New Athens Savings & Loan Association of New Athens, Illinois. *Trial Transcript*, April 24, 1989, pp. 55–64.

Dr. Guse testified further that he believed that he was a stockholder or a partner in entities known as Sun World Lines and Double Cee Investments, Ltd. Burnett had established Sun World Lines to operate the cruise ship, and on at least one occasion, he represented himself as the president of Double Cee Investments, Ltd. *Plaintiffs' Trial Exhibit* No. 815.

The Plaintiffs' direct examination of Dr. Guse contains several references to his association with other business ventures that were controlled by Burnett, and to documents such as a personal financial statement and an escrow account that were prepared by Burnett for Dr. Guse's signature. There is little evidence to suggest that Dr. Guse was or is a sophisticated business person. The overwhelming finding of fact that must result from his testimony is that he voluntarily relinquished to Ron Burnett the power to make his investment related business decisions for him.

In response to Plaintiffs' direct examination, Dr. Guse stated that he "considered Mr. Burnett was acting as an agent for" the group of chiropractors that comprised Double Cee Investments, Ltd. He stated

further that he thought that Burnett was his agent and his representative. *Trial Transcript*, April 24, 1989, p. 76. The other Chapter 7 Debtor, Dr. Croft, testified that he considered Burnett to be the agent and representative for himself personally and for the group of investors. *Trial Transcript*, May 25, 1989, pp. 209–210. The former president of North Kansas Savings Association, Donald R. Pierce, testified that he believed that Burnett was representing the Debtor's group that was putting together the cruise ship venture. *Trial Transcript*, May 25, 1989, p. 247.

Notwithstanding the authorization to act as his agent, and notwithstanding the almost absolute grant of power to make business judgments, Dr. Guse did virtually nothing to monitor or supervise Ron Burnett. The following references are to the Trial Transcript of April 24, 1989: he never questioned or investigated Burnett's background, p. 19; he never verified figures or amounts supplied to the group by Burnett, pp. 26, 33–34; he never requested or received any promissory notes or documents reflecting his investments, statements of loan status or information with respect to his equity interest in Double Cee and other corporations, pp. 12–14, 21–23, 37, 61, 70–72.

Dr. Guse's testimony suggests that on most occasions, he blindly signed whatever documents were presented to him and his group by Burnett. The following references are to the Trial Transcript of April 24, 1989: he signed many papers for Burnett without reading them, pp. 38, 87; he signed many papers without knowing what was going on, pp. 24, 35, 48; he and the group did everything Burnett told them to do, p. 49; he paid no attention to where Burnett was getting other money for investments, p. 66.

As the agent and representative for Dr. Guse and the other chiropractors, Ron Burnett approached North Kansas Savings Association and requested that a letter of credit in the amount of $600,000.00 be posted to Double Cee Investments, Ltd., but that the actual loans be made to Dr. Guse and other chiropractors based on their notes and personal guarantees. *Trial Transcript*, April 24, 1989, pp. 105–113; *Plaintiffs' Trial Exhibits* No. 319 and No. 320. Dr. Guse acknowledged having signed these documents. John L. Highland, a former vice president of North Kansas Savings Association testified, that the Association eventually disbursed $600,-000.00 under this line of credit.

On March 17, 1982, Dr. Guse and the other investors executed new individual notes and personal guarantees as extensions of the loans made under the original letter of credit. As additional collateral for this extension of credit, Ron Burnett on behalf of Dr. Guse and the other investors, represented to North Kansas Savings Association that Republic Escrow Corporation of Santa Ana, California was holding a Certificate of Deposit in the amount of one million dollars. Upon the default of Double Cee Investments, Ltd., the Certificate of Deposit was to be delivered to North Kansas Savings Association. It was eventually determined that the Certificate of Deposit was "invalid" and had been drawn upon an apparently nonexistent bank. *Trial Transcript*, May 25, 1989, pp. 266–267.

Ron Burnett eventually was sentenced to a term in the penitentiary because of his representations concerning the invalid certificate of deposit. *Trial Transcript*, April 24, 1989, pp. 67–68, 180–183. *Trial Transcript*, May 25, 1989, p. 282.

On June 21, 1982, Dr. Guse executed a promissory note to North Kansas Savings Association in the amount of $92,750.00. He testified that when he executed this note, he had no intention of personally paying the principal amount when it became due, because Burnett had told him that he (Burnett) had it all taken care of. *Trial Transcript*, April 24, 1989, p. 55.

The relationship between Dr. Guse and the other investors, and Ron Burnett was at least a joint venture. A joint venture is a species of partnership. *Johnson v. Pacific Intermountain Express Co.*, 662 S.W.2d 237 (Mo.1983) (en banc). The evidence in this proceeding has established that Burnett was in fact and in law, the agent of Dr. Guse. With an almost abso-

lute grant of authority from his principal, Burnett obtained an extension of credit from North Kansas Savings Association by false representation and fraud. Relying on these false representations and fraud, North Kansas Savings Association granted the extension of credit and was damaged when the notes were not paid and the collateral placed as security was determined to be invalid. The Plaintiffs have otherwise satisfied the requirements for nondischargeability under Section 523(a)(2)(A). See *Matter of Van Horne*, 823 F.2d 1285 (8th Cir.1987).

As the Debtor's authorized agent, fraud on the part of Burnett may be imputed to the Debtor for purposes of determining the dischargeability of the debt owed to the person defrauded. *In re Walker (Walker II)*, 53 B.R. 174 (Bankr.W.D.Mo. 1985); *In re Lovich*, 117 F.2d 612 (2d Cir. 1941); *Matter of Curl*, 64 B.R. 14 (Bankr. W.D.Mo.1986); *In re Paolino*, 75 B.R. 641 (Bankr.E.D.Pa.1987); *In re Kay*, 60 B.R. 174 (Bankr.C.D.Cal.1986); *Matter of Gray*, 22 B.R. 676 (Bankr.W.D.Wis.1982); *In re Allison*, 960 F.2d 481 (5th Cir.1992). "Our research confirms that 'the lower courts have held that the rule continues that fraud can be imputed to an innocent partner regardless of his knowledge or involvement for purposes of 11 U.S.C. 523(a)(2)(A).' " *In re Luce*, 960 F.2d 1277, 1282 (5th Cir. 1992) (quoting *In re Calhoun*, 131 B.R. 757, 760–61 (Bankr.D.D.C.1991)).

This Court adopts the holding of *Walker II*, 53 B.R. 174 (Bankr.W.D.Mo. 1985) that for purposes of a determination of dischargeability under Section 523(a)(2)(A), the fraud of an agent acting within the scope of his or her employment or apparent authority is imputed to the debtor/principal.

It is not necessary in these circumstances that the debtor as principal knew or should have known of the agent's fraud. *In re Hosking*, 89 B.R. 971 (Bankr.S.D.Fla. 1988) (citations omitted). Notwithstanding this conclusion, the Court has determined that this Debtor knew or should have known of Burnett's false representation and fraud. The Court has determined that

the Debtor's reckless indifference to his agent's acts satisfies the requirements of those courts that have adopted the "knew or should have known" standard described in *In re Walker (Walker I)*, 726 F.2d 452 (8th Cir.1984), to support a determination of nondischargeability under Section 523(a)(2)(A). Debtor's failure to inquire into Burnett's background at any time, his willingness to sign any document placed before him by Burnett, and his complete lack of any limitation on Burnett's authority to act on his behalf support the conclusion that Debtor knew or should have known of his agent's fraud.

The Plaintiffs have established that North Kansas Savings Association relied on the fraudulent misrepresentations of the Debtor's agent in granting the extension of credit. It is not necessary that the Plaintiffs prove that such reliance was reasonable, as is the requirement of Section 523(a)(2)(B). *In re Ophaug*, 827 F.2d 340 (8th Cir.1987).

By separate order, the obligations of this Debtor to these Plaintiffs, resulting from the extension of credit granted as a result of the fraudulent misrepresentations of Ron Burnett are not dischargeable in this case.

### ORDER

On consideration of the record as a whole, and consistent with the Memorandum entered in this matter

IT IS ORDERED that this matter is concluded; and that this is the final order of the Bankruptcy Court in this Adversary Proceeding; and

That as to Count I of the Plaintiffs' Complaint, judgment is entered in favor of W–V Enterprises, Inc., and E. Michael Wayland, assignees of North Kansas Savings Association, Plaintiffs, and against Milton Lowell Guse, Defendant/Debtor; and that the debt owed by the Defendant/Debtor to these Plaintiffs as a result of the extension of credit obtained as a result of the fraud of the Defendant/Debtor's agent, and as set out in this Complaint, the documents admitted in this proceeding

and in the Plaintiffs' proof of claim is not dischargeable in this case pursuant to 11 U.S.C. § 523(a)(2)(A); and

That as to Count II of the Plaintiffs' Complaint, judgment is entered in favor of the Plaintiffs and against the Defendant/Debtor; and that the debt owed by the Defendant/Debtor to these Plaintiffs as a result of the extension of credit obtained as a result of the false representations of the Defendant/Debtor's agent, and as set out in this Complaint, the documents admitted in this proceeding and in the Plaintiffs' proof of claim is not dischargeable in this case pursuant to 11 U.S.C. § 523(a)(2)(A); and

That as to Count III of the Plaintiffs' Complaint, judgment is entered in favor of the Defendant/Debtor and against the Plaintiffs in that the request to determine nondischargeability is denied as moot.

IT IS FURTHER ORDERED that costs are to be borne by the parties; and that all other requests in this Adversary Complaint and in the pleadings are denied.