**In re George M. CROFT, Debtor,**

**W–V ENTERPRISES, INC., and E. Michael Wayland, assignees of North Kansas Savings Association, Plaintiffs,**

v.

**George M. CROFT, Defendant.**

**Bankruptcy No. 88–40097–172.**

**Adv. No. 88–4127–172.**

United States Bankruptcy Court, E.D. Missouri, E.D.

Feb. 19, 1993.

Charles D. McAtee, E. Lou Bjorgaard Probasco, Eidson, Lewis, Porter & Haynes,

Topeka, KS for W–V Enterprises, Inc. and E. Michael Wayland.

Scott A. Greenberg, Clayton, MO, local counsel, for plaintiffs.

Norman W. Pressman, St. Louis, MO, for Otto and Marlene Gestring, Sr.

Rexford H. Caruthers, St. Louis, MO, for George M. Croft.

Richard J. Scheffler, St. Louis, MO, for Milton Guse.

Stuart J. Radloff, Clayton, MO, trustee.

William T. Weidle, Jr., St. Louis, MO, for Imendia Investors, S.A.

David R. Human, Clayton, MO, for Community Federal.

## MEMORANDUM

JAMES J. BARTA, Bankruptcy Judge.

The Plaintiffs as assignees of North Kansas Savings Association, filed separate Adversary Proceedings against this Debtor, and against another Chapter 7 Debtor, Milton L. Guse (Adversary Proceeding No. 88–4128), alleging that the debts owed are not dischargeable pursuant to Section 523(a)(2)(A) of Title 11 of the United States Code. With respect to the legal theory of the Plaintiffs' case, the Complaint is almost identical in each proceeding. The factual circumstances of each case are substantially similar except that certain of the debts are based on individual notes that were executed at different times. In the interest of economy, the trials of the two Complaints were consolidated to the extent possible. Therefore, although separate Memoranda and Orders are being entered in these separate adversary proceedings, many of the factual and legal determinations are identical.

This is a core proceeding pursuant to Section 157(b)(2)(I) of Title 28 of the United States Code. The Court has jurisdiction over the parties and this matter pursuant to 28 U.S.C. §§ 151, 157 and 1334, and Rule 29 of the Local Rules of the United States District Court for the Eastern District of Missouri.

This Memorandum contains the final findings of fact and conclusions of law of the Bankruptcy Court.

Milton L. Guse and George M. Croft, Debtors, are chiropractors. Dr. Guse has been in practice since 1965 and Dr. Croft has practiced since 1957. In the late 1970s, Dr. Croft attended a positive thinking course at which one of the featured speakers was Ron Burnett ("Burnett"). *Trial Transcript*, April 24, 1989, p. 119. Over the next several weeks, Burnett called Dr. Croft to ask his opinion of the seminar and to engage in general conversation. As a result of one of these conversations, Dr. Croft suggested that Burnett might be interested in purchasing a company known as Pogo Travel Agency in Jackson, Michigan. Burnett eventually took over operations of the travel agency for six to nine months. Dr. Croft testified that he had not invested money in Pogo Travel, and that he believed that he had not become an officer or director of the company. Nevertheless, he acknowledged his signature to a letter of credit dated April 1, 1981, wherein he identified himself as the president of Pogo Travel. *Plaintiffs' Trial Exhibit* No. 380. Dr. Croft did not know if any disbursements were made under this letter of credit, because Burnett was working with the other parties in the enterprise.

During the period between 1979 and 1981, Dr. Croft gave Burnett a total of $10,000.00 in small amounts and at different times. The money was to be used by Burnett for business travel, and not as investments. *Trial Transcript*, April 24, 1989, p. 134. Dr. Croft first gave money to Burnett for investment purposes sometime in 1980. He and another doctor invested a total of $12,000.00 for a Waylon Jennings show in Indianapolis. Burnett subsequently paid the doctor a one-hundred percent return on the investment.

Dr. Croft also gave other money to Burnett for investment purposes. In the early 1980s, he and another doctor paid about $3,000.00 each for an investment in real estate in St. Louis, Missouri. *Trial Transcript*, April 24, 1989, pp. 135–136. He also purchased approximately $7,000.00 worth

of "penny stocks" at about $2.00 per share. The value had increased to about $16.00 or $17.00 per share when he sold his interest and gave the proceeds (approximately $30,-000.00) to Burnett. *Trial Transcript*, April 24, 1989, p. 188. Dr. Croft believed that he was also an investor in Double Cee Investments Ltd., an organization that Burnett said was attempting to finance a cruise ship. Several other doctors, including Dr. Guse, were associated with Dr. Croft in Double Cee Investments, Ltd. However, Dr. Croft believed that he was the closest to Burnett and "stayed in the closest contact with him." *Trial Transcript*, April 24, 1989, p. 146. With Dr. Croft's permission, Burnett also used Dr. Croft's chiropractic office as his business address on several occasions.

Several of the other chiropractors who were introduced to Burnett by Dr. Croft also gave amounts of money to Burnett for investment in bus/train tours in Canada and in a venture described as the Calgary Stampede. On at least two of these occasions, however, money that was given to Burnett for a particular project was "channelled" into other ventures. *Trial Transcript*, April 24, 1989, p. 20.

Through Burnett, several of the other doctors were participants in a loan from a Canadian bank that was to be used to acquire a business known as the Empire Hotel. *Trial Transcript*, April 24, 1989, p. 25. Dr. Croft testified that he had been advised by Burnett that he was also involved in this acquisition. However, Dr. Croft stated that he had no personal knowledge of any documents that he may have signed in connection with the Empire Hotel. *Trial Transcript*, April 24, 1989, p. 142. Dr. Croft also attended other business and social meetings with Burnett; accompanied him on a trip to Mexico with an individual who had been introduced to him by Burnett, for the apparent purpose of promoting a cruise ship line for the Mexican government; at Burnett's suggestion, directed his (Dr. Croft's) secretary to act as a notary on a document that guaranteed payment of an amount that was to be used to lease a cruise ship; also at Burnett's direction, executed certain promissory notes from the New Athens Savings & Loan Association of New Athens, Illinois; and also at Burnett's direction, traveled to Beloit, Kansas (using a ticket that was given to him by an unidentified person) to sign papers to obtain additional funding from North Kansas Savings Association. *Trial Transcript*, April 24, 1989, pp. 150–151, 170–171, 176–178.

Dr. Croft testified further that Burnett had told him that he (Dr. Croft) was the president of an entity known as Sun World Lines. On November 12, 1982, Dr. Croft, as president of Sun World Lines, Ltd., signed a promissory note to New Athens Savings and Loan Association, in the amount of $768,830.16. Burnett had established Sun World Lines to operate the cruise ship, and on at least one occasion, he (Burnett) represented himself as the president of Double Cee Investments, Ltd. *Plaintiffs' Trial Exhibit* No. 815; *Trial Transcript*, April 24, 1989, p. 171.

The Plaintiffs' direct examination of Dr. Croft contains several references to his association with other business ventures that were controlled by Burnett and to documents such as a personal financial statement and an escrow account that were prepared by Burnett for Dr. Croft's signature. Dr. Croft acknowledged that the financial statement prepared for him by Burnett was inflated, and that the majority of the information was not true. *Trial Transcript*, April 24, 1989, pp. 136–139. There is little evidence to suggest that Dr. Croft was or is a sophisticated business person. The overwhelming finding of fact that must result from his testimony is that he voluntarily relinquished to Ron Burnett the power to make his investment related business decisions for him.

Dr. Croft testified that he considered Burnett to be the agent and representative for himself personally and for the group of investors. *Trial Transcript*, May 25, 1989, pp. 209–210. In response to Plaintiffs' direct examination, the other Chapter 7 Debtor, Dr. Guse, stated that he "considered Mr. Burnett was acting as an agent for" the group of chiropractors that comprised Double Cee Investments, Ltd. Dr. Guse

958

stated further that he thought that Burnett was his agent and his representative. *Trial Transcript*, April 24, 1989, p. 76. The former president of North Kansas Savings Association, Donald R. Pierce, testified that he believed that Burnett was representing the Debtor's group that was putting together the cruise ship venture. *Trial Transcript*, May 25, 1989, p. 247.

Notwithstanding the authorization to act as his agent, and notwithstanding the almost absolute grant of power to make business judgments, Dr. Croft did virtually nothing to monitor or supervise Ron Burnett. Except where noted, the following references are to the Trial Transcript of April 24, 1989: he never questioned or investigated Burnett's financial situation, pp. 140, 180; he never verified figures or amounts supplied to the group by Burnett, p. 162; he never received any promissory notes or documents reflecting his investments, statements of loan status or information with respect to his equity interest in Double Cee and other corporations, pp. 134–135, 140–144, 171, 194–195, *Trial Transcript*, May 25, 1989, p. 210. In fact, Dr. Croft stated that he never paid much attention to Ron Burnett when he would come to his chiropractic offices and present documents for his signature. *Trial Transcript*, April 24, 1989, p. 165.

Dr. Croft's testimony suggests that on most occasions, he blindly signed whatever documents were presented to him and his group by Burnett. The following references are to the Trial Transcript of April 24, 1989: he signed many papers for Burnett without reading them, pp. 145–146, 168–169, 172, 177, 179, 183; he signed whatever papers were brought to him, pp. 137–138; he trusted Burnett and signed documents presented to him and gave them right back to Burnett, p. 140.

As the agent and representative for Dr. Croft and the other chiropractors, Ron Burnett approached North Kansas Savings Association and requested that a letter of credit in the amount of $600,000.00 be posted to Double Cee Investments, Ltd., but that the actual loans be made to Dr. Croft and other chiropractors based on their notes and personal guarantees. *Trial Transcript*, April 24, 1989, pp. 105–113; *Plaintiffs' Trial Exhibits* No. 319 to No. 323. Dr. Croft acknowledged having signed these documents. John L. Highland, a former vice president of North Kansas Savings Association testified that the Association eventually disbursed $600,000.00 under this line of credit.

On March 17, 1982, Dr. Croft and the other investors executed new individual notes and personal guarantees as extensions of the loans made under the original letter of credit. As additional collateral for this extension of credit, Ron Burnett on behalf of Dr. Croft and the other investors, represented to North Kansas Savings Association that Republic Escrow Corporation of Santa Ana, California was holding a Certificate of Deposit in the amount of one million dollars. Upon the default of Double Cee Investments, Ltd., the Certificate of Deposit was to be delivered to North Kansas Savings Association. It was eventually determined that the Certificate of Deposit was "invalid" and had been drawn upon an apparently nonexistent bank. *Trial Transcript*, May 25, 1989, pp. 266–267.

Ron Burnett eventually was sentenced to a term in the penitentiary because of his representations concerning the invalid certificate of deposit. *Trial Transcript*, April 24, 1989, pp. 67–68, 180–183; *Trial Transcript*, May 25, 1989, p. 282.

On June 21, 1982, Dr. Croft executed a promissory note to North Kansas Savings Association in the amount of $92,763.44. He testified that when he executed this note, he had no intention of personally paying the principal amount when it became due, because at that time, he did not feel that it was going to be necessary. *Trial Transcript*, May 25, 1989, p. 209.

The relationship between Dr. Croft and the other investors, and Ron Burnett was at least a joint venture. A joint venture is a species of partnership. *Johnson v. Pacific Intermountain Express Co.*, 662 S.W.2d 237 (Mo.1983) (en banc). The evidence in this proceeding has established that Burnett was in fact and in law, the agent of Dr. Croft. With an almost abso-

lute grant of authority from his principal, Burnett obtained an extension of credit from North Kansas Savings Association by false representation and fraud. Relying on these false representations and fraud, North Kansas Savings Association granted the extension of credit and was damaged when the notes were not paid and the collateral placed as security was determined to be invalid. The Plaintiffs have otherwise satisfied the requirements for nondischargeability under Section 523(a)(2)(A). See *Matter of Van Horne,* 823 F.2d 1285 (8th Cir.1987).

■ As the Debtor's authorized agent, fraud on the part of Burnett may be imputed to the Debtor for purposes of determining the dischargeability of the debt owed to the person defrauded. *In re Walker (Walker II),* 53 B.R. 174 (Bankr.W.D.Mo. 1985); *In re Lovich,* 117 F.2d 612 (2d Cir. 1941); *Matter of Curl,* 64 B.R. 14 (Bankr. W.D.Mo.1986); *In re Paolino,* 75 B.R. 641 (Bankr.E.D.Pa.1987); *In re Kay,* 60 B.R. 174 (Bankr.C.D.Cal.1986); *Matter of Gray,* 22 B.R. 676 (Bankr.W.D.Wis.1982); *In re Allison,* 960 F.2d 481 (5th Cir.1992). "Our research confirms that 'the lower courts have held that the rule continues that fraud can be imputed to an innocent partner regardless of his knowledge or involvement for purposes of 11 U.S.C. 523(a)(2)(A).'" *In re Luce,* 960 F.2d 1277, 1282 (5th Cir. 1992) (quoting *In re Calhoun,* 131 B.R. 757, 760–61 (Bankr.D.D.C.1991)).

This Court adopts the holding of *Walker II,* 53 B.R. 174 (Bankr.W.D.Mo.1985), that for purposes of a determination of dischargeability under Section 523(a)(2)(A), the fraud of an agent acting within the scope of his or her employment or apparent authority is imputed to the debtor/principal.

[3] It is not necessary in these circumstances that the debtor as principal knew or should have known of the agent's fraud. *In re Hosking,* 89 B.R. 971 (Bankr.S.D.Fla. 1988) (citations omitted). Notwithstanding this conclusion, the Court has determined that this Debtor knew or should have known of Burnett's false representation and fraud. The Court has determined that

the Debtor's reckless indifference to his agent's acts satisfies the requirements of those courts that have adopted the "knew or should have known" standard described in *In re Walker (Walker I),* 726 F.2d 452 (8th Cir.1984), to support a determination of nondischargeability under Section 523(a)(2)(A). The Debtor's failure to inquire into Burnett's background at any time, his willingness to sign any document placed before him by Burnett, and his complete lack of any limitation on Burnett's authority to act on his behalf support the conclusion that the Debtor knew or should have known of his agent's fraud.

■ The Plaintiffs have established that North Kansas Savings Association relied on the fraudulent misrepresentations of the Debtor's agent in granting the extension of credit. It is not necessary that the Plaintiffs prove that such reliance was reasonable, as is the requirement of Section 523(a)(2)(B). *In re Ophaug,* 827 F.2d 340 (8th Cir.1987).

By separate order, the obligations of this Debtor to these Plaintiffs, resulting from the extension of credit granted as a result of the fraudulent misrepresentations of Ron Burnett are not dischargeable in this case.

### ORDER

On consideration of the record as a whole, and consistent with the Memorandum entered in this matter

IT IS ORDERED that this matter is concluded; and that this is the final order of the Bankruptcy Court in this Adversary Proceeding; and

That as to Count I of the Plaintiffs' Complaint, judgment is entered in favor of W–V Enterprises, Inc., and E. Michael Wayland, assignees of North Kansas Savings Association, Plaintiffs, and against George M. Croft, Defendant/Debtor; and that the debt owed by the Defendant/Debtor to these Plaintiffs as a result of the extension of credit obtained as a result of the fraud of the Defendant/Debtor's agent, and as set out in this Complaint, the documents admitted in this proceeding and in

the Plaintiffs' proof of claim is not dischargeable in this case pursuant to 11 U.S.C. § 523(a)(2)(A); and

That as to Count II of the Plaintiffs' Complaint, judgment is entered in favor of the Plaintiffs and against the Defendant/Debtor; and that the debt owed by the Defendant/Debtor to these Plaintiffs as a result of the extension of credit obtained as a result of the false representations of the Defendant/Debtor's agent, and as set out in this Complaint, the documents admitted in this proceeding and in the Plaintiffs' proof of claim is not dischargeable in this case pursuant to 11 U.S.C. § 523(a)(2)(A); and

That as to Count III of the Plaintiffs' Complaint, judgment is entered in favor of the Defendant/Debtor and against the Plaintiffs in that the request to determine nondischargeability is denied as moot.

IT IS FURTHER ORDERED that costs are to be borne by the parties; and that all other requests in this Adversary Complaint and in the pleadings are denied.