**In re George Richard WHEATLEY & Martha Wheatley, Debtors.**

**Vincent C. CONO, Plaintiff,**

v.

**George Richard WHEATLEY and Martha Wheatley, Defendants.**

**Bankruptcy No. 92–43107.**
**Adv. No. 92–4393–1–KMS.**

United States Bankruptcy Court, W.D. Missouri.

Aug. 20, 1993.

**142**

G.M. Mouse, Independence, MO, for plaintiff.

Steven C. Effertz, Independence, MO, for defendants.

## MEMORANDUM OPINION AND ORDER

KAREN M. SEE, Bankruptcy Judge.

Plaintiff filed a complaint to determine dischargeability of a debt on a promissory note and security agreement pursuant to 11 U.S.C. § 523(a)(2)(A) for fraud or false representations and § 523(a)(4) for defalcation by a fiduciary. Plaintiff alleged that debtor Mr. Wheatley executed a promissory note and a security agreement covering accounts receivable, but that he did not repay the note or hold accounts receivable to pay the note. The court concludes the debt is dischargeable because plaintiff's evidence showed only a breach of contract. The court has jurisdiction over this matter and may enter final orders in this core proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(I).

## I. FACTS

Mr. Wheatley and plaintiff Cono were each 50% shareholders and officers of Wheatley Carpets, Inc., a Missouri corporation with a forfeited charter. Mr. Wheatley was president, plaintiff vice-president, and Mrs. Wheatley secretary/treasurer.

On June 27, 1986, as partial payment for plaintiff's shares of stock, Wheatley Carpets and Mr. Wheatley executed a $13,000 promissory note to plaintiff. The parties executed a security agreement granting plaintiff a security interest in Wheatley Carpets' accounts receivable. The agreement provided debtor would not grant a security interest in receivables to any other party. The agreement stated debtor would continue to own the receivables. The agreement did not prohibit Wheatley Carpets from using receivables in operation of the business. The parties knew and intended that proceeds of receivables would be used in the business. The agreement provided plaintiff the right, after notice, to demand that accounts receivable be assigned to him or paid directly to him by Wheatley's vendees.

Mr. Wheatley made three payments on the note, reducing the principal to $11,500, before he ceased payment because of a dispute over the value of the stock purchased from plaintiff. Plaintiff never exercised his rights to require assignment of receivables or to notify vendees to make payment directly to plaintiff. Plaintiff never filed a UCC statement to perfect the security interest. In this bankruptcy case plaintiff has an unsecured claim based on the note and a judgment on the note.

Rick Mallone, a friend who occasionally loaned debtors money, testified for plaintiff that after Mr. Wheatley executed plaintiff's note and unfiled security agreement, debtors verbally granted Mr. Mallone a security interest in receivables. He also purportedly took security interests in inventory, debtors' home, a rental house, and a judgment on an auto accident.

Until June 1990, Mr. Wheatley operated Wheatley Carpets and used accounts receivable in operation of the business. Business was poor, especially after a major customer, Kroh Brothers Development Company, filed bankruptcy in 1987. In June 1990, Wheatley Carpets ceased doing business.

About June 1990, the IRS seized all accounts receivable for payment of taxes. Neither plaintiff nor Mr. Mallone had perfected an interest in accounts receivable. Debtors transferred the company's remaining assets to Mr. Mallone, who forgave the remainder of their loans.

On June 29, 1992, plaintiff obtained a state court judgment on the note against Mr. and Mrs. Wheatley for $11,500, plus prejudgment interest of $6,358 and attorney fees of $9,302.20 (Mrs. Wheatley was added as a defendant because she was one

of the last corporate officers). The Wheatleys filed a Chapter 7 bankruptcy petition on September 28, 1992.

Mr. Wheatley testified he intended to pay the note at the time he executed it, he made three payments, and he ceased payments because of the dispute over whether the stock had been overvalued. He also produced evidence of other payments to plaintiff on obligations unrelated to the note, which he argued showed intent to pay plaintiff. Mr. Wheatley testified that receivables collected before the IRS seizure were used in operation of the business. There was no evidence that receivables were diverted for any other purpose. Plaintiff also testified that he was not aware of any materially false statements by Mr. Wheatley in the security agreement.

## II. SECTION 523(a)(2)(A), FRAUD OR FALSE REPRESENTATIONS

■ Plaintiff contends the debt on the promissory note is nondischargeable under § 523(a)(2)(A), which bars discharge of debts obtained by "false pretenses, a false representation, or actual fraud." To establish nondischargeability under § 523(a)(2)(A) because of false representations, the creditor must prove five elements:

1) debtor made the representations;
2) at the time he knew they were false;
3) he made them with the intention and purpose of deceiving the creditor;
4) the creditor relied on such representations; and
5) the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

*In re Ophaug,* 827 F.2d 340, 342 n. 1 (8th Cir.1987) (citing *In re Houtman,* 568 F.2d 651, 655 (9th Cir.1978)). The creditor must prove each element by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Friend,* 156 B.R. 257, 259 (Bankr. W.D.Mo.1993). Consistent with congressional intent to give the debtor a fresh start, statutory exceptions to discharge should be construed narrowly against the objecting creditor and liberally in favor of debtor. *In re Van Horne,* 823 F.2d 1285, 1287 (8th Cir.1987); *In re Friend,* 156 B.R. 257, 259.

### A. Subsequent Representation Not Evidence of Earlier State of Mind

■ Plaintiff's description of the alleged misrepresentations is not clear. At trial plaintiff argued that an alleged statement to third party Rick Mallone, verbally granting him a security interest in receivables subsequent to signing of plaintiff's note and security agreement, was the actionable misrepresentation. However, a subsequent misrepresentation to a third party is not actionable by plaintiff, so the alleged subsequent statement could, at best, indicate an earlier state of mind.

In actuality, the alleged misrepresentations appear to be that: 1) Mr. Wheatley promised to pay the note and subsequently failed to do so; 2) by signing the security agreement he promised the obligation would be secured by accounts receivable; and 3) by signing the security agreement he promised the note would be paid by application of the accounts receivable.

The evidence does not support a finding of misrepresentation or fraud. First, as to the promise to pay the note, the evidence is undisputed that when the note was signed, Mr. Wheatley intended to pay it. Second, as to the promise to secure the note with accounts receivable, the receivables were in fact security for the debt. Third, as to the allegation of failure to hold accounts receivable and directly apply all proceeds in payment of the note, there was no such requirement in either the note or security agreement, so there is no misrepresentation on that basis. Plaintiff was not granted ownership of receivables, and in fact the security agreement stated that debtor was the sole owner. The parties intended for receivables to be used in the business. If plaintiff wanted to require application of proceeds to his note, the security permitted him, after notice, to require assignment of receivables and to require vendees to make

payments directly to plaintiff. Plaintiff never invoked these provisions.

Applying the *Ophaug* elements to this case, the only evidence was in regard to the first element. By signing the note debtor represented that he would pay the amount due under the note, and debtor later failed to pay. The evidence established only a breach of the agreement to pay the note and not a fraudulent representation. The unfiled security agreement also constituted a representation that accounts receivable would serve as security. There was no misrepresentation because until accounts receivable were seized by the IRS, they were security, but they were used in the business, as permitted by the agreement.

There was no evidence of *Ophaug* elements two, three and four concerning knowledge of falsity, intent to deceive, and reliance by the creditor on any misrepresentation. There was no evidence of any explicit or implicit misrepresentation made to plaintiff before or at the time the documents were executed. The only evidence concerning intent at the time of execution was: Mr. Wheatley's undisputed testimony that when he signed the note he intended to pay it and other unrelated obligations to plaintiff; undisputed evidence that debtors made three payments on the note plus payments on the unrelated obligations; and plaintiff's own testimony that at trial he was not aware of any materially false statement in the security agreement.

Subsequent statements to Mr. Mallone do not establish intent to make a misrepresentation at an earlier time. The court does not find that debtors granted a security interest in receivables to Mr. Mallone, but even if they did, granting a junior security interest in encumbered property, absent more, does not prove an intent to deceive at the time either the first or second security interest was granted. At most, the subsequent statement indicates an intent for breach of contract because plaintiff's security agreement stated Mr. Wheatley would not grant another security interest in the collateral. There is no indication any subsequent statements reflected Mr. Wheatley's state of mind earlier when he executed plaintiff's note and agreement. Intent to deceive cannot be inferred from this minimal evidence.

### B. Subsequent Statement Not a Fraudulent Representation

The *Ophaug* elements have not been met if plaintiff's argument is construed to be that the actionable misrepresentation was actually the subsequent statement to a third party. A verbal statement allegedly made to Rick Mallone to grant him a security interest some time after plaintiff's security agreement was granted is not a fraudulent representation to plaintiff. Standing alone, the subsequent statement to Mr. Mallone could not have been made with the intent to deceive plaintiff earlier when the note and security agreement were executed. The fourth element is not met because when plaintiff received the note and security agreement he could not have relied on subsequent statements to a third party.

### C. No Evidence Damage Was Proximate Result of Representation

As to the fifth *Ophaug* element, there is no evidence that plaintiff's loss was the proximate result of a misrepresentation. Plaintiff failed to file a UCC financing statement to perfect a security interest as against any other secured creditor or a bankruptcy trustee. Plaintiff's failure to receive accounts receivable was due ultimately to the IRS' seizure in 1990 of accounts receivable in which plaintiff did not have a duly perfected security interest. Earlier accounts receivable were not delivered to plaintiff because the agreement permitted receivables to be used in operation of the business, and until the IRS seizure, they were used with plaintiff's knowledge.

### D. No Evidence of "Totality of the Circumstances"

Plaintiff's alternate theory under § 523(a)(2)(A) is that he proved fraud by a totality of the circumstances rather than by proof of specific misrepresentations. Fraud must be averred with particularity.

Bankruptcy Rule 7009(b); Rule 9(b) FRCP. Plaintiff must prove the facts establishing each element of the alleged fraudulent representation. *See In re Ophaug,* 827 F.2d at 340; *In re Friend,* 156 B.R. 257, 259 (Bankr.W.D.Mo.1993).

■ "Totality of the circumstances," as used in cases such as *In re McDowell,* 145 B.R. 977, 980[4] (Bankr.W.D.Mo.1992), means only that intent to defraud can be inferred from the evidence. It does not mean plaintiff is excused from providing evidence to establish each element. "Totality of the circumstances" cannot be used as a catch-all in lieu of evidence of fraud or misrepresentation.

■ Mere failure to pay a promissory note is a breach of contract. *Sabine v. Leonard,* 322 S.W.2d 831, 837 [5] (Mo. 1959). It does not constitute fraud absent some elevating circumstances. "Conduct that is merely a breach of contract is, of course, not a tort." *Peitzman v. Illmo,* 141 F.2d 956, 961 [9] (8th Cir.), *cert. denied,* 323 U.S. 718, 65 S.Ct. 47, 89 L.Ed. 577 (1944); *Combow v. Kansas City Ground Inv. Co.,* 358 Mo. 934, 218 S.W.2d 539, 540 (1949). An alleged subsequent verbal statement to give Rick Mallone a security interest in accounts receivable does not elevate this breach of contract case to a fraud case under a totality of the circumstances theory. The evidence shows only that debtor promised to pay a note, he made payments on the note, and he failed to pay the balance.

### III. SECTION 523(A)(4), DEFALCATION BY A FIDUCIARY

Section 523(a)(4) bars discharge of a debt "for fraud or defalcation while acting in a fiduciary capacity...." Plaintiff contends debtors were fiduciaries under the security agreement and that they committed defalcations by purposely dissipating accounts receivable to avoid paying the note.

■ Defalcation under § 523(a)(4) must be committed by a fiduciary. 3 Lawrence P. King et al., Collier on Bankruptcy, ¶ 523.14[c], at 523–106 (15th ed. 1993). The

reference to fiduciaries applies only to trustees of express trusts. *In re Long,* 774 F.2d 875 (8th Cir.1985) (citing *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934)). The security agreement here creates no express trust. Debtors who are corporate officers, although they owe a fiduciary duty to the corporation, do not act in "fiduciary capacity" under § 523(a)(4) unless their fiduciary duties arise out of an express, technical or statutory trust. *In re Hutton,* 117 B.R. 1009 (Bankr.N.D.Okla.1990); *In re Long,* 774 F.2d at 878 (corporate officer not "trustee in the 'strict and narrow sense,'" under § 523(a)(4)). Section 523(a)(4) is not applicable because debtors were not fiduciaries pursuant to the definition required by that section.

■ Moreover, there is no evidence debtors dissipated accounts receivable in order to avoid paying the note. The evidence is undisputed that all accounts receivable were seized by the IRS in 1990. Before that time, receivables were, as permitted by the security agreement, used in routine operation of the business.

Plaintiff relies on *L.G. Atkins Co. v. Greenberg,* 16 N.Y.S.2d 885, 886 (Sup.1939) and *In re Eisner,* 35 B.R. 86, 89 (Bankr. N.D.Ohio 1983). Neither is on point legally or factually. In *Eisner,* a debtor who was a corporate president intentionally violated an arrangement set up by the secured creditor for a lockbox account by secretly directing vendees to make payments to the corporation's general account and not into the lockbox account. The intentional diversion of receivables from the lockbox account was held to be a defalcation. In the present case there was no lockbox, debtors did not divert receivables, and plaintiff never exercised his right to require accounts receivable to be assigned to him or paid directly to him.

### IV. CONCLUSION

Plaintiff established only the existence of an unsecured debt based on the promissory note, and a breach of agreement in failure to pay the note. Plaintiff did not establish

any fraudulent representation. Plaintiff has a dischargeable, unsecured debt for the amounts in the state court judgment: $11,500 principal, $9,302.20 attorney fees and $6,358 prejudgment interest, plus post-judgment interest at the rate stated in the judgment to the date the bankruptcy petition was filed.

It is **ORDERED** that judgment be entered in favor of debtors George Richard Wheatley and Martha Wheatley and against plaintiff Vincent C. Cono, with costs against plaintiff, and the debt to Vincent C. Cono in the amount of $27,160.20 plus post-judgment interest shall be discharged in this bankruptcy proceeding.