In re Shirley Joyce **BEASLEY,** Debtor.

**GREEN TREE FINANCIAL CORP.,** Plaintiff,

v.

**Shirley Joyce BEASLEY,** Defendant.

Bankruptcy No. 96–40756–2.

Adv. No. 96–4095–2.

United States Bankruptcy Court, W.D. Missouri.

Dec. 5, 1996.

Erlene W. Krigel, Kansas City, MO, for debtor, defendant.

Michael A. Gould, Kansas City, MO, for plaintiff.

## ORDER

FRANK W. KOGER, Chief Judge.

Plaintiff, Green Tree Financial Corp., filed a complaint to determine dischargeability of debt and objection to discharge in the Shirley Joyce Beasley Chapter 7 case. Green Tree holds two claims in Beasley's case involving the purchases from Central States Truck Center of two trucks by Oak Tree Investments, by its president, the debtor. The purchase of each truck involves an Installment Contract and Security Agreement dated October 13, 1995, under which the debtor personally guaranteed the principal amounts of $44,550.00 and $50,850.00, on a 1991 Kenworth truck and a 1992 Kenworth truck, respectively. Central States Truck Center subsequently assigned both contracts for value to Green Tree.

The evidence in this case is that the debtor and her son, R. Wade Beasley, owned and operated three different companies involved in a sale-purchase-lease arrangement involving over-the-road trucks and trailers. The three companies owned by Debtor and her son consisted of Central States Truck Center (seller), Oak Tree (buyer), and Centralease (lessee).

As to Central States (seller), Wade Beasley was the president and sole shareholder. Debtor was an employee. She did not work at the Central States business location, but rather worked out of her home and visited the business location occasionally to pick up paperwork or to pick up or drop off drivers on behalf of Central States. She was "on-call" on a 24 hour basis for Central States. Creditors of Central States have recently filed an involuntary petition in bankruptcy against it so it is currently involved in a separate bankruptcy in this Court.

As to Oak Tree (buyer), Debtor was the president, a member of its Board of Directors, and a shareholder. She had signatory power over its bank accounts, possessed the authority to enter into contracts for the purchase of trucks by the corporation, and ran the business out of her home. Wade Beasley was the Secretary/Treasurer of Oak Tree and was a member of its Board of Directors. He also had signatory power over its bank accounts, possessed the authority to enter into contracts for the purchase of trucks by the corporation, and had the authority to execute documents on behalf of and in the name of his mother, the debtor herein.

As to the third company, Centralease (lessee), Wade Beasley was the President and sole shareholder, had signatory power over its bank accounts and the authority to enter into contracts for the lease of trucks by the corporation. Debtor was the sole employee of Centralease and had signatory power over its bank accounts. As with Oak Tree, she ran the business out of her home and utilized the same business equipment, phone lines, and phone number as was used for Oak Tree.

The evidence indicates that Oak Tree (by the debtor) purchased more than 50 trucks from Central States during the years 1992 through 1995, all of which were sold by and through Wade Beasley. Oak Tree purchased its trucks exclusively from Central States. In making the transaction, Wade Beasley concurrently acted as the seller of the trucks through Central States and buyer of the trucks on behalf of Debtor and Oak Tree. After the sale, Wade Beasley, on behalf of Debtor and Oak Tree, leased the trucks to Centralease. In other words, Wade Beasley used one of his companies (Central States) to sell trucks to another of his companies (Oak Tree) who would then lease the truck to his third company (Centralease).[1] Centralease in turn would lease the trucks to third party drivers. The third party driver would pay their lease payments to Centralease, who would pay its lease payment to Oak Tree, who would make its contract payment to its lender if there was a loan against that particular truck.[2] This arrangement occurred more than 50 times and at the time of Shirley Beasley's filing of her petition in this bankruptcy, Oak Tree had 21 trucks and trailers.

In each of these instances, Debtor Shirley Beasley was not involved in the transaction until after the truck or trailer was sold by Central States to Oak Tree, or to herself individually, and leased to Centralease. Wade Beasley was the one who selected the truck, established the asking price, made the decision to purchase the truck (at a selling price he himself had established) and executed all contract documents on behalf of his mother, Debtor Shirley Beasley. According to the testimony, Shirley Beasley never questioned any of these transactions in any manner, never monitored or supervised her son's

1. Although Wade Beasley did not own Oak Tree, he was an insider of that company, as described above.

2. Apparently, Oak Tree utilized three primary lenders to finance these arrangements, one of which was Green Tree. All three lenders had outstanding loans against Oak Tree when Shirley Beasley filed her petition in bankruptcy.

transactions, and never limited his authority or ability to enter the transactions on her behalf. She personally guaranteed many of the loans on the trucks.

As mentioned above, this adversary involves the October 13, 1995, assignment to Green Tree by Central States of the contracts regarding two of the truck sales. Many of the sales between Central States and Oak Tree described above involved the assignment of the contract between Central States and Oak Tree to Green Tree, as was the case with the trucks involved herein. Green Tree is a non-insider company. According to the records custodian of Green Tree, prior to accepting assignment of contracts from Central States, Green Tree required that Central States provide it with a completed and signed credit application from the buyer (Oak Tree and Shirley Beasley); a fully completed commercial installment contract and security agreement executed by the buyer and personally guaranteed by Shirley Beasley; a fully executed assignment from the seller (Central States) to Green Tree making certain warranties; a title of guaranty letter executed by the buyer acknowledging the assignment of the contract, the buyer's responsibility to title the collateral with a lien in favor of Green Tree, and receipt of the current equipment title for the collateral; and proof of insurance. Central States provided Green Tree with each of these required documents.

Green Tree's witness testified that it relied on this documentation provided by Central States and Oak Tree and accepted the assignment of the two contracts on October 13, 1995. However, despite all the warranties expressed by Oak Tree and its principals, the two trucks had never been delivered to or possessed by Central States, Oak Tree, or either of the Beasleys. Despite the representations and warranties given by Central States and Oak Tree, the trucks had never been registered or titled in Missouri or any other state under any of their names.

Apparently, neither the Beasleys nor any of their companies ever owned the trucks at all.[3] In January, 1996, Green Tree learned that the two trucks were located in a field in Maysville, Oklahoma, having been placed there by the actual owners of the trucks, Verna and Wilmer Tischhauser. Prior to Green Tree's finding the trucks, Shirley Beasley had never informed Green Tree that she did not have possession of the trucks or that the trucks were subject to valid perfected security interests of the Farmers & Drovers Bank of Council Grove, Kansas, and were owned by the Tischhausers. In fact, the written representations and warranties of Central States, Wade Beasley, Shirley Beasley, and Oak Tree were in direct contravention of the fact that the Tischhausers owned and possessed the trucks and that Farmers & Drovers Bank had a security interest in them.

According to Green Tree, it relied on the false statements and warranties given to it by the Beasleys when it accepted the assignment of the contracts and extended credit to the Beasleys and that they have thereby been damaged. It asserts Shirley Beasley should be denied discharge of the debts under those contracts due to the false statements made in the written documentation provided to Green Tree to induce it to enter into the assignment and extend credit, pursuant to 11 U.S.C. § 523(a)(2)(A).

Section 523 provides, in pertinent part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a

---

**3.** There was some allegation that Wade Beasley had, in fact, possessed the titles to the trucks at some point but that he returned them to the actual owners, the Tischhausers. However, no evidence was presented at the hearing to substantiate this contention and is not ultimately relevant.

statement respecting the debtor's or an insider's financial condition. . . .

In order to prevail under this section, the creditor must prove, by a preponderance of the evidence:

(1) that the debtor made the representations;

(2) that at the time he knew they were false;

(3) that he made them with the intention and purpose of deceiving the creditor;

(4) that the creditor justifiably relied on the representation; and

(5) that the creditor sustained a loss as the proximate result of the representations having been made.

*In re Ophaug,* 827 F.2d 340, 342 n. 1 (8th Cir.1987); *In re Wheatley,* 158 B.R. 140, 143 (Bankr.W.D.Mo.1993); *Field v. Mans,* —— U.S. ——, ——, 116 S.Ct. 437, 446, 133 L.Ed.2d 351 (1995). The evidence presented on exceptions to discharge are to be narrowly construed against the objecting creditor and liberally viewed in favor of the debtor. *Wheatley,* 158 B.R. at 143. Debtor contends that actual fraud is required under § 523(a)(2)(A), *In re Ophaug,* 827 F.2d at 342 n. 1, and thus Green Tree was required to show she never intended to repay the debt, despite her representation that she did intend to repay it. However, because it is impossible for the Court to look inside a person's thoughts to determine whether there was fraudulent intent, the Court must look to the surrounding circumstances to see if it appears as though actions were taken with fraudulent intent. *See In re Willis,* 190 B.R. 866, 868 (Bankr.W.D.Mo.1996).[4]

▪ Shirley Beasley maintains Green Tree failed to prove at trial that Oak Tree, by and through her, obtained the loans for the trucks by false pretenses, false representation or actual fraud. First, she alleges that she made no "representation" that the trucks were in her possession. Rather, the provisions in the documents regarding Oak Tree's possession of the trucks were all in future tense[5] and thus were contract obligations to keep the truck in Oak Tree's possession, not representations that they were in Oak Tree's possession at that time. She maintains there was no representation that Oak Tree already had the trucks in its possession and that it would be illogical for Oak Tree, the buyer, to have possession of the trucks from Central States, the seller, prior to Central States' being paid for the trucks. This was to occur after Green Tree financed the sale. Consequently, she contends her failure to obtain and keep possession of the trucks was a breach of contract, not a misrepresentation supporting a finding of fraud.[6]

Debtor also maintains the second requirement of § 523(a)(2)(A) has not been met because if the Court finds the documents do contain representations that Oak Tree was in possession of the trucks, she never knew that the trucks were not on Central States' lot until alerted to that fact by Green Tree in January, 1996. She testified that it was their practice to have the trucks on the lot at the time of the sale and she had no reason to believe these two trucks were not there.

Debtor also asserts the Green Tree failed to prove it relied on any representations by

---

4. Debtor points to the fact that Oak Tree did make the first payment on one of the contracts to Green Tree. However, as discussed, *infra,* the other circumstances pointing to fraud on the part of Wade Beasley outweigh the significance of that one payment.

5. For example, the Commercial Installment Contract and Security Agreement provides:
    (c) You will keep the Property in your possession in good condition and repair. You will use the property for its intended and lawful purposes. Unless otherwise agreed in writing, the Property will be kept at the address listed on page 1 of this Contract.

6. While it is true that mere breach of contract does not constitute fraud nor does it support nondischargeability under § 523(a)(2)(A), *In re Wheatley,* 158 B.R. 140, as discussed, *infra,* the Court believes this case involves more than a mere breach of contract. *Wheatley,* cited by Debtor, is distinguishable because in that case, no one made any misrepresentations. The debtor merely promised to pay and then was unable to do so. Here, Wade Beasley "sold" property he did not own or have in his possession.

Wade Beasley that he was in possession of the trucks. Green Tree financed some 30 trucks sold by Central States and according to Debtor, Green Tree never sent a representative to view the trucks.

Finally, Debtor maintains Green Tree was not damaged as a result of anything she did, but rather any loss to Green Tree was caused by Central States and Wade Beasley, and she should not be held responsible for his fraud. She states she did not sign the loan documents in the first place, but rather her signature was made either by her son or by Karon Valentine, a former employee of Central States. She asserts their fraud should not be imputed to her because she received no benefit from her son's misrepresentation in that she and Oak Tree received none of the funds from Green Tree but rather all of the money went to Central States.

■ On the other hand, Green Tree cites several cases which have held that fraud on the part of an agent may be imputed to the debtor for purposes of determining dischargeability of a debt owed to the person defrauded. *In re Walker (Walker I)*, 726 F.2d 452 (8th Cir.1984); *In re Walker (Walker II)*, 53 B.R. 174 (Bankr.W.D.Mo.1985); *In re Guse*, 150 B.R. 950 (Bankr.E.D.Mo.1993); *In re Croft*, 150 B.R. 955 (Bankr.E.D.Mo. 1993). Moreover, a debtor's reckless indifference to his agent's act can satisfy the requirement that the debtor knew or should have known of her agent's fraud. *Walker I*, 726 F.2d at 454; *Guse*, 150 B.R. at 954.

The Court notes that according to *Walker I*, 726 F.2d 452, in order for an agent's fraud to be imputed to the debtor-principal for purposes of nondischargeability, the creditor is required to show the debtor knew or should have known of the agent's fraud, or that he was recklessly indifferent to his agent's fraud. Although the bankruptcy court in *Walker II* criticized the Eighth Circuit's *Walker I* opinion, *Walker I* appears to still be the rule in the Eighth Circuit. However, post-*Walker*, a distinction has developed where the case involves actual fraud or misrepresentation of an agent acting within the scope of his employment or apparent authority. *See Guse*, 150 B.R. 950; *Croft*, 150 B.R. 955. In these particular cases, it is not necessary that the debtor as principal knew or should have known of the agent's fraud in order to have the agent's fraud imputed to her. *Guse*, 150 B.R. at 954; *Croft*, 150 B.R. at 959.

The Court believes that Wade Beasley committed actual fraud while acting in his scope of employment or apparent authority and thus *Guse* and *Croft* apply, so it is not necessary that Shirley Beasley have known of his fraud. Nevertheless, the Court believes that under either scenario, Shirley Beasley's debt to Green Tree is nondischargeable because as discussed, *infra,* the Court believes that if Shirley Beasley did not know of her son's fraud, she should have known.

Clearly, Wade Beasley obtained Green Tree's financing through fraud. He represented to Green Tree that he was in possession of the trucks at a time when he knew they were not on his lot. The Assignments, signed by Wade Beasley, specifically state, "Seller warrants . . . [t]he Property has been delivered to the [B]uyer(s) in good condition and has been accepted by the [B]uyer(s)." In addition, Shirley Beasley (or Wade on her behalf) signed the application for Missouri title on which neither the Tischhausers nor Farmers & Drovers Bank was mentioned. In fact, Oak Tree is listed as the owner and Green Tree is listed as the first lienholder on each of the applications. Finally, Shirley Beasley (or Wade on her behalf) signed letters dated October 13, 1995, which stated, "I also acknowledge the receipt of the current equipment Title or MSO, on the [truck] from the dealer [Central States] selling me the [truck]."

The Court further finds that Green Tree's reliance on these representations was justified. *Field v. Mans,* —— U.S. ——, ——, 116 S.Ct. 437, 446, 133 L.Ed.2d 351 (1995). As Debtor states in her trial brief, Green Tree financed over 30 trucks sold by Central States. The trucks had always been in the

Beasleys' possession before and there had never been a problem with the titles before. As a result, Green Tree's reliance on the Wade Beasley's representation that they had possession and that the titles were forthcoming was justified. Obviously, Green Tree has been damaged due to the fraud.

Shirley Beasley's assertion that she did not sign any of the documents is not determinative here because she admitted Wade had the authority to sign these documents on her behalf. Clearly, he was her authorized agent and she personally guaranteed the deals he entered. These two particular deals with Green Tree are typical of the business of Central States and Oak Tree and were typical of the types of arrangements Wade had the authority to enter on Shirley's behalf. As a result, Wade was clearly acting within the scope of his apparent authority when he committed the fraud against Green Tree. As a result, under *Guse* and *Croft,* his fraud may be imputed to Shirley Beasley.

Furthermore, even under *Walker I* 's rule, the Court finds Shirley Beasley should have known about Wade's fraud. The Court recognizes that Shirley Beasley did not guarantee Central States' representations or performance, but only guaranteed Oak Tree's performance, and that most of the representations as to possession were technically made by Central States (as the seller) rather than Oak Tree. Under normal circumstances, the Court would have to find that the two companies are separate and that the guarantor of the buyer company could not be held responsible for the misrepresentations of the seller company. However, this case presents a situation where the same two people, the debtor and her son, are insiders of both companies, as well as a third related company. The Court believes that to outsiders, it was difficult if not impossible to distin-guish which of the three companies the outsider was dealing with. It is undisputed that Wade acts as both the buyer and seller in these truck purchase arrangements. It is also undisputed that Shirley Beasley works for all three companies and that Wade had his mother's authority to purchase trucks on behalf of Oak Tree and herself individually and she admitted she never limited his authority. She further admitted that Wade executed documents on her behalf and she never objected.[7]

While the Court is convinced that for the most part Wade Beasley did all of the dealing when it came to buying and selling trucks, Shirley Beasley was actively involved in the companies, as evidenced, among other things, by the number of checks she signed on their accounts. She had knowledge of the day-to-day operations of the company and was aware when Wade was engaging in a deal to purchase a truck. She processed the paperwork regarding the truck deals for the companies. She allowed Wade Beasley to act on her behalf as her agent, and personally guaranteed his deals. As a result, under these circumstances, if Shirley Beasley did not know about this fraud, she should have known. At the very least, Shirley Beasley was recklessly indifferent toward Wade's activities under her authority and therefore, her debt to Green Tree which was obtained through Wade Beasley's fraud, is nondischargeable under § 523(a)(2)(A).[8]

While this result may seem harsh in the sense that Shirley Beasley was probably swindled by her son whom she trusted, her son, acting on her behalf, committed fraud against her creditor. She allowed him to routinely act on her behalf and clearly authorized him to act as her agent. She did not monitor or question his transactions but yet she personally guaranteed his contracts, in-

---

7. She also never objected to Karon Valentine's executing documents on her behalf.

8. Debtor cites two Missouri cases stating that under Missouri law she must have received a benefit from her agent's fraud in order for the agent's fraud to be imputed to her. *See Walters v. Maloney,* 758 S.W.2d 489, 500 (Mo.Ct.App. 1988); *Fallert Tool & Engineering Co. v. McClain,* 579 S.W.2d 751 (Mo.Ct.App.1979). However, Missouri's fraud law is not the same as fraud for purposes of § 523(a)(2)(A), and the cases applying § 523(a)(2)(A) do not mention a similar requirement.

cluding the two involved here. When a mother personally guarantees her son's business dealings and contracts, and the son turns out to be engaging in fraud, who should bear the loss, the mother or the third person who relied on the mother's guarantee? Under the circumstances of this particular case, this Court must find that it is the mother who should bear the loss.

### Conclusion

The Court finds that despite Debtor's contentions to the contrary, the loans made in relation to the trucks were obtained through fraud, at least on the part of Wade Beasley. The Court further finds that when Wade Beasley obtained the loans through fraud, he was acting within the scope of the apparent (and actual) authority of Debtor Shirley Beasley. Finally, the Court finds that if Shirley Beasley did not actually know about her son's misdealings, she should have known. At the very least, she was recklessly indifferent to her son's conduct when he acted under her authority. For these reasons, Shirley Beasley's debt to Green Tree is hereby ordered to be nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

The foregoing Memorandum Order constitutes Findings of Fact and Conclusions of Law as required by Fed.R.Bankr.P. 7052.

So ORDERED.